**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Tom HICKS, Defendant-Appellant.**

No. 79–5431
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 13, 1980.

Alvin E. Entin, North Miami Beach, Fla., for defendant-appellant.

Linda Collins Hertz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, FRANK M. JOHNSON, Jr. and GARZA, Circuit Judges.

PER CURIAM:

Tom Hicks was convicted by a jury of the United States District Court for the Southern District of Florida of conspiring to import marijuana in violation of 21 U.S.C. §§ 952, 963 and of conspiring to possess marijuana with intent to distribute in viola-

* Fed.R.App.P. 34(a), 5th Cir. R. 18.

tion of 21 U.S.C. §§ 841(a)(2), 846. He appeals that conviction. We affirm.

On September 5, 1978, while patrolling in the Gulf of Mexico 185 miles off the coast of the United States, members of the crew of the Coast Guard Cutter VALIANT sighted the SIMBA, a forty two foot sailing sloop. Because the SIMBA was of United States registry, the Coast Guard ordered Lt. Commander Churchill of the VALIANT to board the other vessel for a routine inspection.

Along with Ensign Shumaker, Commander Churchill boarded the SIMBA and asked the three men on board who was in charge. Hicks answered that he was that person. In response to several other questions, Hicks stated that the SIMBA had come from British Honduras and Hispaniola and was headed for Key West. The SIMBA's location was consistent with this statement. After being told that some of the life jackets were in the cabin below, Churchill looked down into the cabin and noticed water entering the vessel at an alarming rate. Nevertheless, Hicks seemed unconcerned about the amount of water the SIMBA had taken on. Commander Churchill contacted the VALIANT to obtain some help in dealing with the water problem. He then went below to determine the seriousness of the situation and what might best be done to remedy the problem.

Once inside the cabin, Commander Churchill noticed several large parcels wrapped in black plastic. Churchill's experience with the Coast Guard led him to suspect that the objects might be bales of marijuana. He took one up to the desk and opened it. An examination of the substance confirmed Commander Churchill's suspicions. Ensign Shumaker and Com-

mander Churchill then arrested Hicks and gave him *Miranda* warnings. Hicks questioned whether possession of marijuana in international waters was a crime but Commander Churchill informed him that the main charge would be conspiracy to import. Hicks stated, however, that the marijuana (ninety bales of it) was for his "personal" use.

■ On appeal Hicks complains of the presence of the Coast Guard officers aboard the SIMBA and of their seizure of the five thousand pounds of marijuana. His contentions are without merit. This Court has repeatedly upheld the constitutionality of 14 U.S.C. § 89(a) which grants the Coast Guard authority to board American flagship vessels on the high seas. *See, e. g., United States v. Williams*, 617 F.2d 1063, at 1075 (5th Cir. May 12, 1980) (en banc); *United States v. Erwin*, 602 F.2d 1183, 1184 (5th Cir. 1979); *United States v. Warren*, 578 F.2d 1058, 1064–65 (5th Cir. 1978) (en banc).[1] The Coast Guard has plenary authority to board American vessels beyond the twelve-mile limit with neither probable cause nor even particularized suspicion. *Williams, supra*, 617 F.2d 1063, at 1081; *Erwin, supra*, 602 F.2d at 1184; *Warren, supra*, 578 F.2d at 1064–65. After legally boarding the vessel, Churchill noticed the flooding and entered the cabin under his authority to conduct a safety inspection. The bales, in plain view, and the odor emanating from them clearly established probable cause sufficient to justify a full and complete search. *See Erwin, supra*, 602 F.2d at 1184; *United States v. Wright*, 588 F.2d 189, 193–94 (5th Cir. 1979); *United States v. Odom*, 526 F.2d 339, 342 (5th Cir. 1976).[2]

---

1. Hicks contends that the boarding of the SIMBA under the authority of 14 U.S.C. § 89(a) is constitutionally infirm under the dictates of *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). That case involved a warrantless inspection of a business for violations of the Occupational Safety and Health Act of 1970. Nothing in *Barlow's* suggests that our decisions upholding the constitutionality of 14 U.S.C. § 89(a) are no longer viable.

2. This Court sitting en banc in *Williams, supra*, held that "the fourth amendment requires at least a reasonable suspicion that contraband or evidence of criminal activity will be found before the Coast Guard may . . . search any 'private' area of the *hold* of a vessel in international waters for the purpose of finding such items." 617 F.2d at 1087 (emphasis in original). The *Williams* court explicitly declined to determine the applicability of the reasonable

Appellant's final contention is that possession of a controlled substance in international waters is no crime. The argument is not properly before this Court since it was not raised below. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). However, we note that the contention is irrelevant. Hicks was charged not with possession but rather with conspiracy to import and conspiracy to possess with intent to distribute.

AFFIRMED.

---

suspicion requirement "to test searches of living quarters or personal effects . . . aboard vessels." *Id.* 1087 n.26. *Williams* concerned the search of the hold of a cargo vessel; in the present case the Coast Guard searched the cabin of a sailing sloop. We presume that the stricter probable cause requirement governs here.