**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roy William ODOM and Walter Reed
King, Defendants-Appellants.**

No. 75–1572.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1976.

William B. Plowman, Tampa, Fla., for defendants-appellants.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Terry Smiljanich, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before THORNBERRY, SIMPSON and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

This case is on direct appeal from the United States District Court for the Middle District of Florida. Appellant Roy William Odom was convicted by the district court after a bench trial of conspiracy to import into the United States (21 U.S.C. § 963) and conspiracy to possess with intent to distribute (21 U.S.C. § 846) approximately 6,000 pounds of marijuana. Appellant Walter Reed King was convicted of possession with intent to distribute (21 U.S.C. §§ 841(a)(1) and 841(b)(1)) and conspiracy to possess with intent to distribute (21 U.S.C. § 846) approximately 6,000 pounds of marijuana.

The following arguments are made by appellants in this appeal: (1) that the district court erred in failing to suppress the evidence seized by the U. S. Coast Guard Cutter "Valiant"; (2) that certain statements made by appellant Odom to Drug Enforcement Administration agent Miller should have been suppressed by the district court; and (3) that the evidence introduced by the government was not sufficient to support the conviction of appellant King for conspiracy to possess and distribute marijuana with intent to distribute the same.

The following facts are pertinent to a resolution of these issues. While on a routine law enforcement patrol in the Yucatan Straits between Cuba and Mexico, the Coast Guard Cutter "Valiant" observed on its radar a small craft which

was travelling due north. After determining that the vessel in question, the "Mar-J-May", was based in the United States, the commander of the "Valiant" decided that he would order a boarding party to conduct a routine safety and documentation inspection. Chief Petty Officer Fieck and two other members of the Valiant's crew conducted the inspection. The captain of the "Mar-J-May", appellant Odom, accompanied Chief Fieck while the documentation papers and safety equipment were inspected. According to his testimony at trial Chief Fieck noticed that the fishing equipment on the "Mar-J-May" appeared to be rusty and unused. The last item to be inspected by Chief Fieck was the main beam identification number. This is a number corresponding to the number of the vessel shown on the documentation papers, and is generally carved into the main beam of a vessel. In order to observe the main beam identification number on the "Mar-J-May", it was necessary to open the hatch into the hold. Odom was very reluctant to allow Chief Fieck to open the hatch, and told him that it would be difficult to see the number because a large quantity of ice and fish was packed in the hold. At this point in time Chief Fieck radioed back to Commander Telfer on board the "Valiant" for instructions, who in turn radioed the command duty officer of the Seventh Coast Guard District in Miami to request legal advice. Word filtered back to Chief Fieck that it was necessary to check the main beam identification number as part of the inspection. When the hatch was opened, Chief Fieck saw only a small quantity of ice, and when he was checking the beam to see if it was in fact the main beam of the ship, he noticed several unmarked burlap bags at the rear portion of the hold. The hatch was replaced, and Chief Fieck radioed the "Valiant" for advice. Once again, word came back from Miami that the hold should be inspected and the contents of the burlap sacks examined.

Contained in the hold of the "Mar-J-May" were approximately 6,000 pounds of marijuana.

At approximately 1:00 a. m. on the morning of October 17, 1974, Odom and his crew members were arrested and read their *Miranda* warnings[1] by Chief Fieck. Shortly thereafter, they were transferred to the "Valiant" where they were again read *Miranda* warnings. Odom signed a statement saying that he had read the rights and understood them. Since the "Valiant" did not have facilities for the detention of prisoners, Odom and his crew were first kept on the flight deck. They were later moved to a partially enclosed area called the starboard air castle. None of the prisoners were interrogated until Drug Enforcement Administration agent Miller arrived via Coast Guard Helicopter on October 18. Miller advised Odom of his rights before interrogating him. Odom waived his rights and told Miller of their plan to rendezvous with another ship, the "Lively One", 60 miles off the coast of Florida. The marijuana was to be taken to Tampa by the "Lively One" for off-loading. Odom agreed to cooperate with a controlled delivery of the marijuana to the other members of the conspiracy. The plan ultimately resulted in the arrest of appellant King at the off-loading dock in the early hours of October 21, 1974. King, who was the owner of the "Lively One", was observed by Miller with three other individuals unloading the marijuana from the "Lively One". On the same day, October 21, 1974, Odom was presented before a magistrate in Tampa.

For the following reasons, we feel that the district court's decision must be affirmed.

## I.

The government contends, and the district court held, that the search in question should be governed by border search standards, and that the search of the "Mar-J-May" was permissible if "reason-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

able suspicion" existed to believe that contraband was on board. *See United States v. Hart,* 506 F.2d 887 (5 Cir. 1975), for a list of border search cases. The government's rationale is that a vessel which is travelling to the United States that is outside the borders of the United States must cross the border if it is to reach its apparent destination, and that its connection with the border, even though it may be 200 miles out at sea, is much closer than a motor vehicle found within one mile of the border. For the reasons which follow, we find it unnecessary to rule on this issue.

 The Coast Guard is authorized to make inquires, examinations, inspections, searches, seizures, and arrests upon the high seas for the prevention of violation of the laws of the United States.[2] It was therefore permissible for Chief Fieck and two other crew members of the "Valiant" to board the "Mar-J-May" and conduct an administrative inspection under the authority of the foregoing statute. While conducting the administrative inspection, certain circumstances became evident to Chief Fieck which we believe supported a finding of probable cause to search the hold of the "Mar-J-May": (1) the fishing gear on the "Mar-J-May" appeared to have been inoperative for some time; (2) Odom was reluctant to open the hatch into the hold, and told Chief Fieck that it was full of fish and ice which obscured the main beam identification numbers. Chief Fieck learned that this was a lie when the hatch was opened, and only small quanti-

ties of ice were visible; and (3) when he was examining the beam on which the identification number was carved to see if it was the main beam of the ship, Chief Fieck saw an undetermined amount of burlap sacks in the rear of the hold.

To summarize, the initial boarding and administrative inspection made by the crew of the "Valiant" was permissible under 14 U.S.C. § 89. Further search was supported by probable cause after the facts mentioned above became evident to Chief Fieck. We therefore hold that the marijuana seized from the "Mar-J-May" was properly admitted in evidence, and that the district court correctly denied the motion to suppress.

## II.

Appellant Odom also contends that the district court erred in failing to suppress statements that he made to Drug Enforcement Administration agent Miller, because the statements were the product of an illegal detention, improper *Miranda* warnings, unnecessary delay in presenting him before a U. S. Magistrate, and improper interrogation.

 After reviewing the relevant portions of the transcript, we are of the opinion that Odom was properly advised and re-advised of his constitutional rights as enumerated in *Miranda v. Arizona, supra.* In our review of the record, we also found adequate evidence to support the district court's finding that Odom was not mistreated and that no improper interrogation took place.

---

2. 14 U.S.C. § 89(a). "The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the *high seas* and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance. When from such inquiries, examination, inspection, or search it appears that a

breach of the laws of the United States rendering a person liable to arrest is being, or has been committed, by any person, such person shall be arrested or, if escaping to shore, shall be immediately pursued and arrested on shore, or other lawful and appropriate action shall be taken; or, if it shall appear that a breach of the laws of the United States has been committed so as to render such vessel, or the merchandise, or any part thereof, on board of, or brought into the United States by, such vessel, liable to forfeiture, or so as to render such vessel liable to a fine or penalty and if necessary to secure such fine or penalty, such vessel or such merchandise, or both, shall be seized." (emphasis added)

Odom's primary contention in this regard is that the statements made to agent Miller should be suppressed because of the delay of approximately five days in bringing him before a U. S. Magistrate. Certainly, delay prior to arraignment is a factor that must be considered in determining voluntariness, but such delay must be "unnecessary" before it will render a confession inadmissible. *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1966). Odom contends that he and his crew were unreasonably detained aboard the "Valiant" in order to facilitate the Drug Enforcement Administration's plan to arrest the other people involved in the conspiracy. It is true that the United States Supreme Court expressly condemned delay in arraignment by arresting officers when the only reason for such delay is to give them an opportunity to extract a confession from the defendant, but the Court also recognized that certain circumstances may justify a delay between arrest and arraignment.[3] Also, this court has stated that although Congress established six hours as a minimum period which would pass muster,[4] a longer delay merely constitutes another factor to be considered by the trial judge in determining voluntariness. *United States v. Hathorn,* 451 F.2d 1337, 1341 (5 Cir. 1971).

Under the unique circumstances in this case, we do not think there was unnecessary delay in presenting Odom before a U. S. Magistrate: (1) Odom was arrested 200 miles from the nearest American territory; (2) the helicopter that brought Drug Enforcement Administration agent Miller to the "Valiant" was too large to land, so it would have been difficult and possibly dangerous to attempt to fly Odom to an American port; and (3) Odom was presented before a magistrate immediately after the "Valiant" arrived in Tampa.

### III.

Appellant King's contention that there was insufficient evidence to support his conviction for possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1), must be rejected. The record reflects adequate evidence to support this count.

[7] The sufficiency of the evidence with respect to the conspiracy count, 21 U.S.C. § 846, is less clear because King's participation cannot be inferred merely from his association with the other defendants; however, we feel that the following evidence, when considered in the light most favorable to the government, would allow a reasonable-minded jury to fairly conclude that King was guilty of the conspiracy charge beyond a reasonable doubt. *United States v. Duke,* 423 F.2d 387 (5 Cir. 1970); *citing, Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Not only was King the sole owner of the "Lively One", but there was testimony at trial that he went to the marina at 3:00 a. m. with defendants Daniel, Kiken, and Bennett, boarded the "Lively One" with several of the other defendants, discussed unloading the marijuana with them, and was at least present when the marijuana was unloaded.

The decision of the district court is therefore affirmed.

---

**3.** After noting that the next step in the proceeding after arrest is to arraign the arrested person before a judicial officer as quickly as possible so that he may be advised of his rights and so that the issue of probable cause may be promptly determined, the Court in *Mallory* goes on to state that "[t]he duty enjoined upon arresting officers to arraign 'without unnecessary delay' indicates that the command does not call for mechanical or automatic obedience." 354 U.S. at 455, 77 S.Ct. at 1360.

**4.** 18 U.S.C. § 3501 was promulgated by Congress to establish standards for the admissibility of confessions in evidence in criminal prosecutions brought by the United States or by the District of Columbia.