**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Richard Jeff SHELNUT, Joseph Wally Hanifin, Michael Conklin and Samuel Hazelrig, Defendants-Appellants.**

**No. 79–5101
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Aug. 28, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Philip S. Greene, Donna Claire Pendergast, Houston, Tex., for defendants-appellants.

John M. Potter, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEE, HENDERSON and HATCHETT, Circuit Judges.

HENDERSON, Circuit Judge:

The appellants were convicted of conspiracy to import marijuana into the United States and conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C.A. §§ 846 and 963; *see* 21 U.S.C.A. §§ 841(a)(1) and 952(a) (related substantive offenses). The appellants enumerate five errors that boil down to the legality of the search of the shrimping vessel PAPPY and the existence of requisite intent of the defendants to commit the charged offenses.

The Coast Guard cutter DURABLE, while inspecting Japanese tuna boats in international waters 180 miles south of the mouth of Mississippi River on the afternoon of May 4, 1979, observed a vessel on radar. The vessel, bearing the name PAPPY on a detachable board on its hull, came into sight at 7:00 p. m. It was not flying a flag and was headed toward Texas. The PAPPY did not appear to carry any shrimping equipment and was outside shrimping waters. The commander of the DURABLE ordered his crew to board the vessel.

At a suppression hearing, the trial court determined that the decision to board the boat was "motivated by [a] good faith effort to make a safety and documentation inspection." In arriving at this conclusion the district judge noted that the detachable nameplate violated Coast Guard regulations, that the name of the boat was not properly filed with the Coast Guard, and that it was Coast Guard policy to inspect vessel identification numbers on American vessels whenever possible.

Lieutenant James Moon, an inexperienced officer, led the boarding party. After going aboard he apparently[1] asked the man who identified himself as the master to state the location of the vessel identification number. This request was refused, so Coast Guard seamen proceeded with a search of the boat.

The search party checked for the identification number in the aft hold before going to the main hold, where the number is often displayed. Upon entering the aft hold, at lease some of them smelled marijuana and observed bales, which, upon minimal inspection, turned out to be marijuana. The ap-

---

1. It is not clear that the lieutenant in fact asked this question. The district judge, at the suppression hearing, found that he did.

pellants suggest that beginning the search for the identification number in the aft portion of the ship shows that the proffered justification for the search was a pretext. The district court rejected this assertion, noting that there is no standard location for the vessel identification number except that it is always below deck. In any case, the court found, Lieutenant Moon began to search in the aft section because of his inexperience, not because of an "improper motive to look for marijuana."

 The appellants seem to admit that the boarding and search satisfied the requirements formulated by this court and applicable statutes, but maintain that those authorities must fall under the weight of the fourth amendment. This contention is without merit. The trial court held that the boarding of the PAPPY was part of a document and safety check, justified by the circumstances under which it was made. The evidence supports this conclusion. A United States vessel in international waters may be boarded for the purpose of conducting such an inspection without any particularized suspicion of a violation of the law, *United States v. Warren*, 578 F.2d 1058, 1064–65 (5th Cir. 1978) (en banc); *but see United States v. Piner*, 608 F.2d 358 (9th Cir. 1979), so certainly this boarding, made with probable cause to believe registration infractions had occurred, was permissible. The constitutionality of inspections made under authority of 14 U.S.C.A. § 89(a) is dealt with in *Warren*; for further discussion see *United States v. Erwin*, 602 F.2d 1183, 1184 (5th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980); *United States v. Whitaker*, 592 F.2d 826, 828–30 (5th Cir.), *cert. denied*, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979); *United States v. Conroy*, 589 F.2d 1258, 1264–69 (5th Cir.), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979); *United States v. Cadena*, 585 F.2d 1252 (5th Cir. 1978); *United States v. One 43 Foot Sailing Vessel*, 538 F.2d 694 (5th Cir. 1976); *United States v. Odom*, 526 F.2d 339, 342 (5th Cir. 1976); *cf. United States v. Freeman*, 579 F.2d 942, 944–47 (5th Cir. 1978) (customs search). Once the Coast Guard

crewmen were aboard the PAPPY, the strong odor of marijuana, the fact that it was in plain sight, and the argumentative manner of the person identified as the ship's master all indicate that the discovery and seizure were proper, and therefore the marijuana was admissible. *United States v. Delgado*, 615 F.2d 294, 296 (5th Cir. 1980); *United States v. Erwin*, 602 F.2d at 1184; *United States v. Whitaker*, 592 F.2d at 829; *United States v. Conroy*, 589 F.2d at 1265; *United States v. Warren*, 578 F.2d at 1065; *United States v. Odom*, 526 F.2d at 342. Similarly, appellants' contention that the Coast Guard was obligated to obtain a warrant before making its safety and documentation check has, as they admit, been rejected by this court. *United States v. Warren; cf. United States v. Conroy*, 589 F.2d at 1268 (discussing *Warren*); *United States v. Freeman*, 579 F.2d at 945 (customs search).

The fourth amendment to our Constitution, which protects from unreasonable government-sponsored intrusion, is one of the most cherished safeguards in the Bill of Rights. Two recent and much-publicized Supreme Court decisions serve as a reminder of the broad scope of the protection afforded by the amendment. In *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Court held that a warrantless administrative search violated the amendment. In *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) random stops of automobiles were ruled unconstitutional when made without any guidelines or suspicion of criminal activity.

 We do not interpret these cases to mean that the search of the PAPPY was unconstitutional. We have recently reaffirmed our long-standing position that seizures and searches on the high seas are fundamentally different from those on land. *United States v. Williams*, 617 F.2d 1063 (5th Cir. 1980) (en banc). The appellants are content to cite *Prouse* and *Barlow's* in passing. We need not construct any argument around them where the appellants have failed to do so. It will suffice to say that in both cases the Court was

careful not to spread its net too wide, and nothing in the opinions suggests that the Constitution forbids Coast Guard inspections of American vessels on the high seas conducted in pursuance of a policy of stopping as many vessels as possible, let alone those justified by visible violations of the regulatory statutes.

United States Customs agents were aboard the DURABLE when the PAPPY was first sighted, and they went along on the search. The finding of the trial court that they accompanied the Coast Guard personnel in the capacity of observers, and only for that reason, is supported by the record. Moreover, contrary to the interpretation the appellants would have us make, the en banc decision of this court in *Warren*, 578 F.2d at 1066–67, demonstrates that in this case the participation of the Customs agents "in the boarding, interrogation, arrests, and seizures . . . does not invalidate those actions." *Id.* at 1067. The search was made by the Coast Guard, and the mere presence of Customs agents did not change its character. *Id.; cf. United States v. Bates*, 526 F.2d 966 (5th Cir. 1976).

The appellants also urge that there was insufficient evidence to show that they were members of a conspiracy; that it was the aim of the conspiracy to bring the marijuana into the United States (as opposed to transferring it to vessels going abroad); or that they intended to distribute the marijuana.

The PAPPY was loaded with almost fifteen tons of marijuana. Small amounts of marijuana and hashish were found in the galley. These circumstances support the inference that there existed an agreement to achieve an illegal purpose—the importation of marijuana. *Iannelli v. United States*, 420 U.S. 770, 777 n.10, 95 S.Ct. 1284, 1289 n.10, 43 L.Ed.2d 616, 623 (1975); *United States v. Bankston*, 603 F.2d 528, 532 (5th Cir. 1979). The defendants were arrested on a boat literally packed full of contraband, and it was fair to conclude that the crew-members knew of the conspiracy

and participated in the illegal enterprise. *United States v. Whitmire*, 595 F.2d 1303, 1316–17 (5th Cir. 1979); *United States v. Conroy*, 589 F.2d at 1265; *United States v. Teal*, 582 F.2d 343, 345 (5th Cir. 1978); *United States v. Christian*, 505 F.2d 94, 96 (5th Cir. 1974).

The vessel was headed for Galveston, Texas. The appellants claim the PAPPY did not have sufficient fuel to reach the United States, but the transcript does not support this assertion, and even if there had not been enough fuel the court[2] could have found that the conspirators had miscalculated their fuel supply. The evidence supports the conclusion that the PAPPY was bound for home. *United States v. Conroy*, 589 F.2d at 1269–71. Finally, the possession of such a large amount of marijuana is itself sufficient to support the finding that the appellants intended to distribute it. *United States v. Love*, 599 F.2d 107, 109 (5th Cir.), *cert. denied*, 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312 (1979).

The search of the PAPPY was constitutional, and the government proved all elements of the conspiracy. The convictions are

AFFIRMED.

---

2. Trial before a jury was terminated when the defendants changed their pleas to guilty, subject to their reservation of certain suppression motions. The court rejected the conditional pleas and the trial resumed, but the appellants waived trial by jury.