**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Leroy Alexander MAZYAK, III, Charles Franklin Adams, Lawrence Marshall Moore, Jr. and Charles Fletcher Allen, Defendants-Appellants.**

No. 80–5326.

United States Court of Appeals,
Fifth Circuit.
Unit B

July 17, 1981.

Melvin S. Black, Miami, Fla. (Court-appointed) for Mazyak and Allen.

G. David O'Leary, Miami, Fla., for Adams.

Max P. Engel, Miami, Fla., for Moore.

Linda Collins-Hertz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before HILL and VANCE, Circuit Judges, and LYNNE,* District Judge.

JAMES C. HILL, Circuit Judge:

Appellants Leroy Alexander Mazyak III, Charles Franklin Adams, Lawrence Marshall Moore, Jr. and Charles Fletcher Allen, were each convicted of conspiracy to import marijuana into the United States, 21 U.S.C. § 952(a) (West 1972), and conspiracy to possess marijuana with intent to distribute, 21 U.S.C. § 841(a)(1) (West 1972).

Appellants raise three points on appeal. First, they argue that certain evidence must be suppressed because the Coast Guard's boarding and subsequent search of their vessel violated the fourth amendment. Second, they contend that the evidence was insufficient to convict them on both counts. Third, they urge that the court erred in admitting several documents, including nautical charts found aboard the vessel.

---

* District Judge of the Northern District of Alabama, sitting by designation.

For the reasons set out below, we affirm the appellants' convictions.

## I. The Journey and Cargo of the ISLAND QUEEN

On May 2, 1978 appellants Mazyak, Allen, Moore and Adams left Miami, Florida aboard a forty-two foot Grand Banks trawler, the ISLAND QUEEN. The evidence showed that the ISLAND QUEEN traveled down through the Bahamas to the western area of Puerto Rico, down to Columbia, then to Cayman Brac. On May 21, 1978, when the ISLAND QUEEN was approximately 70 miles south of Cuba, it was stopped by the United States Coast Guard cutter DEPENDABLE.

Ensign Pekoske led a boarding party onto the ISLAND QUEEN to check for violations of United States laws. The four appellants were the only persons aboard the vessel. Mazyak and Allen said that the destination of the ISLAND QUEEN was Miami. Mazyak also misidentified himself.

Quartermaster Neal noticed marijuana seeds and stems on the deck. He also smelled the odor of marijuana. While inspecting the engine room, Ensign Pekoske observed several bales of covered material and smelled the odor of marijuana. Mazyak, the captain of the vessel, was with Ensign Pekoske at the time.

After Pekoske had observed the bales in the engine compartment, Mazyak said, "Okay, let's stop this charade," proceeded to the forward compartment and took out a sailbag which contained a green leafy substance. A field test for marijuana proved positive. The four appellants were arrested and the vessel searched. Approximately 14,611 pounds of marijuana were found stashed throughout the vessel.

## II. The Search of the ISLAND QUEEN

█ First, appellant argues that the Coast Guard's boarding and seizure of the vessel was a pretext which abused the authority for safety inspections under 14 U.S.C. § 89. We have held on numerous occasions that the Coast Guard's plenary authority under § 89(a) "to stop and board American vessels on the high seas to inspect for safety, documentation, and obvious customs and *narcotics violations* to be reasonable within the meaning of the fourth amendment." *United States v. DeWeese*, 632 F.2d 1267, 1269 (5th Cir. 1980); *United States v. Jonas*, 639 F.2d 200, 202 (5th Cir. 1981) (emphasis added). These inspections may be conducted "in the complete absence of suspicion of criminal activity." *United States v. DeWeese* at 1269; *United States v. Williams*, 617 F.2d 1063, 1075 (5th Cir. 1980) (en banc).

█ Even if we concede appellants' argument that the Coast Guard boarded the ISLAND QUEEN solely to search for narcotics violations,[1] it does not follow that the inspection was pretextual. Rather, inspections for "obvious narcotics violations" are explicitly authorized by our case law. Here, the Coast Guard boarding party observed marijuana seeds and stems and smelled marijuana immediately upon boarding the ISLAND QUEEN. Further, the vessel's Captain opened a sailbag for Ensign Pekoske which contained a green leafy substance. Accordingly, appellants' argument on this point is devoid of merit.

Second, appellants argue that Ensign Pekoske's search of the sailbag in the engine room invaded their legitimate expectation of privacy. Though the assertion of a legitimate expectation of privacy in a sailbag found in an engine room appears questionable, we need not reach that issue because, considering the circumstances as a whole, Mazyak clearly gave his consent to search the sailbag. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–2048, 36 L.Ed.2d 854 (1973).

## III. Sufficiency of the Evidence

The evidence is sufficient to convict all four appellants on both counts. *United States v. DeWeese*, 632 F.2d 1267, 1272 (1980).

In *DeWeese*, we explicitly relied on *United States v. Alfrey*, 620 F.2d 551 (5th Cir. 1980) in holding that

---

1. The record does not support appellants on this point.

... the probable length of the voyage, the large quantity of marijuana on board, and the necessarily close relationship between the captain and his crew were factors from which the jury could reasonably find guilt beyond a reasonable doubt. *United States v. DeWeese* at 1273; *see United States v. Alfrey* at 556. These three factors were the sole evidence upon which the conviction in *DeWeese* was affirmed.[2]

 Here we have an (1) equally lengthy voyage (19 days); (2) a large quantity of marijuana (14,611 pounds); and (3) an equally close relationship between captain and crew inferable from the length of the cruise and size of the vessel. Mazyak's misidentification of himself creates a permissive inference that he was attempting to escape detection. Finally, the government introduced a letter discovered in the ship's wheelhouse addressed to all four defendants that links them together. In sum, the three *Alfrey-DeWeese* factors alone would be sufficient to convict. Here, those factors were buttressed by additional evidence. Intent to distribute can be inferred from the quantity of the contraband involved. *United States v. Grayson*, 625 F.2d 66 (5th Cir. 1980). A reasonable jury could find the appellants guilty beyond a reasonable doubt.

## IV. Admissibility of Charts, Letter, and Receipts

Appellants also challenge the admissibility of certain documents. First, they argue that eleven nautical charts were improperly admitted because they were hearsay and because they were not authenticated.

 We find that these charts were properly admitted as declarations of coconspirators. *United States v. Postal*, 589 F.2d 862, 886 n. 41 (5th Cir. 1979). Regarding these charts, the district court found that:

[t]he charts in this case appear to have been kept by one or more of the persons aboard the vessel, that they were found on board the boat at the time of the seizure, that the condition had not been changed, that the circumstances are such that the matters that relate to the finding and matters therein contained should be allowed to be viewed, particularly since this boat was not found within a mile offshore of a known or habitable portion of any land area.

It was out at sea, over 300 miles away, and it was seventy miles south of Cuba and it is certainly a reasonable inference and/or presumption that charts have to be aboard a boat that is that far out and in that area in the Caribbean sea; and, certainly, the Court finds that it is much so here inescapable that the entry or entries were made by one or more of the crew, and accordingly will admit them under 801(d)(2)(E), provided, that of course, the government otherwise meets the necessary requirement of the James case which the Court will address itself to at the conclusion of all the evidence.

Record, Vol. 9, at 485–486. This reasoning comports with our approval of the admission of the vessel's log in *Postal*. Furthermore, the charts were properly authenticated. Federal Rule of Evidence 901(a) states that "[t]he requirement of authentication ... is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Here,

---

**2.** We agree that *Alfrey* does not stand "for the principle that a crew member's mere presence aboard a boat carrying a large quantity of marijuana is adequate to sustain a conviction for conspiracy to possess and import." *United States v. Willis*, 646 F.2d 189 at 190 (denial of petition for rehearing) (5 Cir. 1981).

As noted by *United States v. DeWeese*, 632 F.2d 1267 (5th Cir. 1980), there must be additional evidence to affirm a conviction. Specifically, there must also be a voyage of sufficient length on a vessel small enough to create the inference that the crew members were aware

of the marijuana stashed on the vessel. *See United States v. DeWeese* at 1272. Here, a voyage of 19 days on a 42 foot trawler is more than adequate to create the inference that the crew was aware of the 14,611 pounds of marijuana on the ISLAND QUEEN. This conclusion is buttressed by the presence of seeds and stems on the deck as well as the odor of marijuana on the vessel. But, of course, the presence of marijuana seeds, stems or odor is not required to establish a *prima facie* case of conspiracy under *United States v. DeWeese*, 632 F.2d 1267 (5th Cir. 1980).

that requirement was met when Ensign Pekoske testified that these were the charts which he ·had taken from the ISLAND QUEEN on May 21, 1978.

Second, appellants challenge the admission of what. was called the "precious cargo" letter at trial. Appellants contend that the letter was hearsay and not properly authenticated.

The letter was addressed to all four defendants by name. It read in full: "Dear Grand Banks Lady. I say to you farewell your journey for you carry my. greatest treasure. On precious cargo my thoughts are with you. I bid you farewell.· Love Julie." The letter was discovered in the wheelhouse by Agent Walde.

■ The government offered the letter for the limited purpose of linking the appellants with the vessel and with one another. The use of the letter for this limited purpose was not hearsay. The letter was not introduced to.prove the truth of the matter asserted; rather, it was introduced as circumstantial proof that the appellants were associated with each other and the boat. *United States v. Canieso,* 470 F.2d 1224, 1232 (2d Cir. 1972) (Friendly, J.); 6 Wigmore, Evidence § 1766 at 180 (2d ed. 1940).

Appellants' authentication argument is also without merit. As previously noted, Federal Rule of Evidence 901(a) requires only that there be "evidence sufficient to .support a finding that the matter in question is what its proponent claims." Here, the evidence shows that Agent Walde found a letter addressed to the four appellants in the wheelhouse of the ISLAND QUEEN. The government did not claim that a person named Julie had written the appellants a letter regarding their attempt to import marijuana. Hence, the government did not have to authenticate the contents of the letter. *See United States v. Natale,* 526 F.2d 1160, 1173 (2d Cir. 1975).

Perhaps the better practice would have been to excise the contents of the letter to avoid the possibility of prejudice. However, we do not find that the district court committed reversible error in failing to treat the letter in this way.

Third, appellants urge that four receipts, a work order·for repair work performed on the ISLAND QUEEN on April 28, 1978, a hotel· receipt from the Mayaguez Hilton in Puerto Rico with Mazyak's name on it, a fuel receipt from the DuPont Plaza Hotel in Miami, Florida on May 2, 1978, and a receipt for new equipment for the ISLAND QUEEN were improperly admitted into evidence. They contend that all four documents are hearsay.

■ Once again, the.government did not offer these documents to prove the truth of the· matter asserted, *i. e.* that·a payment for work repairs, a hotel room, fuel, and·equipment additions actually occurred. Rather, these receipts were introduced as circumstantial evidence for ·two purposes: (1) to corroborate the route which the ISLAND QUEEN traveled, and (2) to corroborate that the ISLAND ·QUEEN ·was preparing for a long voyage. This court has affirmed the admission of·a·hotel receipt, a luggage invoice and a travel agency business card under virtually identical circumstances. *United States v. Mejias,* 552 F.2d 435, 446 (5th Cir. 1977). Likewise, we affirm the admission of these four receipts for the limited, nonhearsay purpose for which they were introduced.

## V. *Conclusion*

In sum, the government proved its case and the appellants' convictions are affirmed.

■ We note, *sua sponte,* that since the imposition of sentence in this case, the Supreme Court has held that it is improper for a court to sentence defendants found guilty of the charged conspiracy offenses to a special parole term. *Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). Accordingly, the district court, following the issuance of the mandate, must amend appellant's sentence to delete the special parole term.

AFFIRMED with instruction.