UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard Emery CLARK, Zygmund
Wojciech Fornalski,
Defendants-Appellants.

No. 81–5099
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 28, 1981.

Rehearing Denied Feb. 1, 1982.

Philip Carlton, Jr., Miami, Fla., for defendants-appellants.

Linda Collins Hertz, Asst. U. S. Atty., Miami, Fla., for the U. S.

Before HILL, VANCE and HATCHETT, Circuit Judges.

PER CURIAM:

Richard Emery Clark and Zygmund Fornalski appeal their conviction after bench trial for willfully and knowingly possessing marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846.

On April 6, 1977 the Coast Guard cutter, POINT BARNES, sighted the cabin cruiser, C–LARK II, in the vicinity of Gun Cay, approximately fifty miles southeast of the Florida coast. The POINT BARNES was

on law enforcement patrol and had been told to watch for a white cabin cruiser approximately thirty feet in length that was suspected of carrying narcotics. The C–LARK II met the general description of that vessel, and the POINT BARNES ordered her to stop and prepare to be boarded by the Coast Guard.

Clark and Fornalski were the only people aboard the C–LARK. In response to a question from a Coast Guard officer, Clark stated that the C–LARK had come from Gun Cay and was going to Ft. Lauderdale. A customs officer aboard the POINT BARNES stated to the Coast Guard captain his belief that the C–LARK was loaded with some type of cargo. Clark and Fornalski were told to open the door to the ship's cabin. The officers aboard the POINT BARNES saw that the floor of the C–LARK's cabin was strewn with burlap bags. The customs officer asked Clark what was contained in the ship's cabin. Clark replied that the ship was carrying fish. When the officer asked Clark to produce the fish, he said "just come aboard." In fact, the C–LARK was carrying approximately 2,000 pounds of marijuana. Upon boarding, the Coast Guard and customs officials saw marijuana in the cabin within plain view. Clark and Fornalski were then frisked, read their rights, and placed under arrest. The C–LARK was thoroughly searched and brought into Miami.

Clark and Fornalski contend on appeal that their right to be free from unreasonable searches and seizures and their *Miranda* rights were violated in the course of their encounter with the Coast Guard. These contentions have become commonplace in cases such as this, and in light of the numerous fifth circuit decisions on these subjects we conclude that the contentions are meritless.

## I

The Coast Guard has plenary power under 14 U.S.C. § 89(a) to stop and board American vessels on the high seas to inspect for safety, documentation, and obvious customs and narcotics violations. The fact that this authority is exercised without probable cause or reasonable suspicion does not violate the fourth amendment. *See, e. g., United States v. Mazyak*, 650 F.2d 788, 790 (5th Cir. 1981); *United States v. Jonas*, 639 F.2d 200, 202 (5th Cir. 1981); *United States v. De Weese*, 632 F.2d 1267, 1269 (5th Cir. 1980); *United States v. Williams*, 617 F.2d 1063, 1075–77 (5th Cir. 1980) (en banc); *United States v. Erwin*, 602 F.2d 1183, 1184 (5th Cir. 1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980); *United States v. Warren*, 578 F.2d 1058, 1064–65 (5th Cir. 1978) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). Evidence developed at the suppression hearing conducted by the trial court indicates that the Coast Guard stopped the C–LARK both for the purpose of conducting a safety and document check and inspecting the C–LARK for obvious narcotics violation. The Coast Guard was therefore clearly justified in ordering the C–LARK to stop. The Coast Guard was also justified in ordering Clark to open the door to the ship's cabin because an inspection of the cabin would be a routine part of any safety and documentation inspection. After the Coast Guard and customs officers boarded the ship, they found marijuana inside the ship's cabin within plain view. This discovery provided probable cause for the search of the entire vessel. *United States v. Jonas*, 639 F.2d at 203; *United States v. Erwin*, 602 F.2d at 1184; *United States v. Warren*, 578 F.2d at 1065–66; *United States v. Hillstrom*, 533 F.2d 209, 210–11 (5th Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977); *United States v. Odom*, 526 F.2d 339, 342 (5th Cir. 1976). The trial court therefore acted properly in denying the motion to suppress evidence for violation of the fourth amendment.

## II

Clark also contends that the contents of his preboarding conversation with officers should have been suppressed because the officers failed to recite the *Miranda* warnings to him prior to asking him questions about the C–LARK's destination.

This contention is without merit. Fifth Circuit decisions have squarely held that the routine stop, boarding and inspection of an American vessel on the high seas by the Coast Guard does not in itself create a "custodial" situation that triggers the need for *Miranda* warnings. *United States v. Gray*, 659 F.2d 1296, 1300–1302 (5th Cir. 1981); *United States v. Jonas*, 639 F.2d at 203–04; *United States v. Postal*, 589 F.2d 862, 887 (5th Cir.), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979); *United States v. Warren*, 578 F.2d at 1070. Clark has failed to establish the existence of any special circumstances that would render the preboarding conversation a custodial interrogation for *Miranda* purposes.

### III

As a final matter, Clark and Fornalski contend that the trial court erred by allowing the marijuana into evidence where the "chain of custody" linking the evidence to them had been broken. After the C–LARK was seized by the Coast Guard, officer Pope piloted the vessel to Miami, arriving about noon on April 6, 1977. Pope testified that he turned the bales of marijuana over to a Drug Enforcement Agency (DEA) agent whose name he could not remember. DEA Agent Aguiree testified that he picked up the bales from the customs docks in Miami about 12:30 on April 6 shortly after they were unloaded from the C–LARK.

█ The trial court determined that there was a sufficient degree of certainty that the marijuana introduced at trial was from the C–LARK to warrant its admission into evidence. We see no reason to reverse that determination. *See, e. g., United States v. Hughes*, 658 F.2d 317, 320 (5th Cir. 1981); *United States v. Mullins*, 638 F.2d 1151, 1152 (8th Cir. 1981); *Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960). The minor break in the chain of possession hypothecated in this case might properly affect the weight that the trial judge accorded that evidence as the trier of fact, but should not preclude its admission into evidence. *United States v. Hughes*, 658 F.2d at 320; *United States v. Colatriano,*

624 F.2d 686, 689 (5th Cir. 1980); *United States v. Henderson*, 588 F.2d 157, 160 (5th Cir.), *cert. denied*, 440 U.S. 975, 99 S.Ct. 1544, 59 L.Ed.2d 794 (1979).

AFFIRMED.