706 F.2d 1198
 13 Fed. R. Evid. Serv. 673
 UNITED STATES of America, Plaintiff-Appellee,
v.
German CEBALLOS, Frank Joseph Williams, David Larue
Williams, Juan Caicedo Rodriguez, Pedro A.
Jimenez, Jesus Antonio Mesa, Leopoldo
Caicedo, and Gratiniano
Vallecilla Prado,
Defendants-
Appellants.
 No. 81-5527.
 United States Court of Appeals,
Eleventh Circuit.
 June 10, 1983.
 
 H. Lee Bauman, Miami, Fla., for Frank J. Williams.
 Davis G. Anderson, Jr. (Court-appointed), Tampa, Fla., for David Larue Williams & Ceballos.
 Robert A. Herce (Court-appointed), Tampa, Fla., for Juan C. Rodriguez.
 Thomas M. Gonzalez (Court-appointed), Tampa, Fla., for Jesus Antonio Mesa, Pedro A. Jimenez, L. Caicedo & C.V. Prado.
 William B. King, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellee.
 Appeals from the United States District Court for the Middle District of Florida.
 Before RONEY and CLARK, Circuit Judges, and GIBSON*, Senior Circuit Judge.
 RONEY, Circuit Judge:
 
 
 1
 This direct appeal arises out of the conviction on drug-related charges, after arrest on the high seas off the Florida Gulf coast, of eight crewmen on board the shrimper "Carol." On appeal, all eight defendants challenge the legality of the boarding by Coast Guard and Customs officers, and the sufficiency of the evidence either to establish that they knew the cargo consisted of marijuana, or to prove, even if they were aware of its contents, that they intended and conspired to distribute and import the marijuana. Defendant David Williams attacks the admission at trial of a letter sent by him, to a law enforcement officer subsequent to his arrest, offering to cooperate in return for "some things." We affirm.
 
 
 2
 I. Legality of the Boarding, Search, Seizure and Arrest
 
 
 3
 The key to the legality of the boarding by both Coast Guard and Customs officers is whether the action can be attributed, in whole or significant part, to the Coast Guard or whether it must be attributed entirely to the Customs Service, the Coast Guardsman acting simply as an agent of the Customs Service. The distinction is critical because the two government agencies possess substantially different authority to stop and board vessels on the high seas. The Coast Guard may stop and board American vessels on the high seas to check for safety, documentation and obvious customs and narcotics violations. See 14 U.S.C.A. Sec. 89(a). The exercise of this authority is reasonable within the meaning of the fourth amendment even in the absence of any suspicion of criminal activity, let alone probable cause. United States v. Clark, 664 F.2d 1174, 1175 (11th Cir.1981); United States v. Mazyak, 650 F.2d 788, 790 (5th Cir.1981), cert. denied, 455 U.S. 922, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982); United States v. Jonas, 639 F.2d 200, 202 (5th Cir.1981); United States v. DeWeese, 632 F.2d 1267, 1269 (5th Cir.1980), cert. denied, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 188 (1981); United States v. Williams, 617 F.2d 1063, 1075 (5th Cir.1980) (en banc); United States v. Erwin, 602 F.2d 1183, 1184 (5th Cir.1979), cert. denied, 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980); United States v. Warren, 578 F.2d 1058, 1064-65 (5th Cir.1978) (en banc), reaff'd in relevant part on reh'g, 612 F.2d 887 (5th Cir.) (en banc), cert. denied, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980).
 
 
 4
 On the other hand, the jurisdiction of the Customs Service does not generally extend to the high seas. It is usually limited to customs waters, which extend approximately twelve miles off the United States coast. See 19 U.S.C.A. Secs. 1581(a), 1401(j).
 
 
 5
 The district court upheld the boarding on the finding of a joint Coast Guard-Customs effort. Whether the boarding can be sustained under the Coast Guard's authority depends upon whether the district court's finding that the Coast Guardsman boarded the "Carol" as a Coast Guard representative, not as a Customs agent under 14 U.S.C.A. Sec. 89(b), is clearly erroneous. See United States v. Guillen-Linares (Guillen-Linares I ), 636 F.2d 78, 81 (5th Cir.1981) (treating determination as to whether Coast Guard officer boarded vessel as Customs agent a finding of fact).
 
 
 6
 The events leading up to the boarding of the "Carol" on March 10, 1981 began the prior week when a supervisory Customs officer, Alexander Murphy, and a Coast Guard Lieutenant, Stephen Venckus, discussed the possibility of a joint patrol off St. Petersburg, Florida in a Customs vessel. Venckus agreed to provide a petty officer, Robert Farley, to serve as the Coast Guard representative on a mission scheduled to commence March 10th. Although Farley's primary responsibilities with the Coast Guard had been as a machinery technician, and he had never before participated in a boarding on the high seas, he had successfully completed the Coast Guard five-week course on maritime law enforcement. No other petty officers more experienced in seizures were available for the mission.
 
 
 7
 Prior to sailing, Venckus met with Farley to outline his role in the mission. Venckus emphasized to Farley that he should not do anything he believed was improper under either Coast Guard regulations or the boarding statute, even if suggested by Customs officers. In addition, Farley later discussed his role with Customs officer Murphy, who emphasized that Farley should be the primary boarding officer on any seizures beyond the twelve-mile limit.
 
 
 8
 The mission commenced on March 10 with Farley, Murphy and two other Customs officers on board the "Striker," a Customs vessel. That afternoon, the "Striker" encountered the "Carol" approximately 45 miles off the Florida coast in waters known for drug trafficking. Customs had learned the previous night from state law enforcement officials that the "Carol" was suspected of carrying a large quantity of marijuana. A number of signs reinforced the suspicion of illicit smuggling. The vessel's bow lay low in the water, all rigging for shrimping had been removed, and the fuel tank was unusually large for a fishing trawler. Farley observed that the vessel's name was affixed in a manner that violated Coast Guard regulations. He agreed with Murphy to the boarding, and the two law enforcement officers advised the crew of the "Carol" to prepare for boarding, Murphy announcing a joint "United States Coast Guard-United States Customs" operation and Farley terming it a Coast Guard operation. Farley, dressed in full Coast Guard uniform as required by that Service's regulations, boarded first followed by one of the two junior Customs officers.
 
 
 9
 Given Farley's affirmative acquiescence in the decision to board the "Carol," his active participation in the actual boarding, and his apparent compliance with his supervisor's instructions not to engage in any action unauthorized by Coast Guard regulations or federal statute, the district court's finding that Farley boarded in the capacity of a Coast Guardsman is not clearly erroneous. This Court has upheld under the Coast Guard boarding statute, 14 U.S.C.A. Sec. 89(a), the boarding of American vessels on the high seas in joint operations involving Coast Guard officers and other federal employees. See United States v. Shelnut, 625 F.2d 59, 62 (5th Cir.1980) (Coast Guard and Customs officers), cert. denied, 450 U.S. 983, 101 S.Ct. 1520, 67 L.Ed.2d 818 (1981); United States v. Warren, 578 F.2d at 1066-67 (Coast Guard, Customs and Drug Enforcement Agency officers); United States v. Hillstrom, 533 F.2d 209, 211 (5th Cir.1976) (Coast Guard and Customs officers), cert. denied, 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977).
 
 
 10
 Defendants' reliance on United States v. Guillen-Linares (Guillen-Linares II), 643 F.2d 1054 (5th Cir.1981), in which the former Fifth Circuit invalidated a boarding conducted by Coast Guardsmen under the direction of Customs, is misplaced because the district court in Guillen-Linares expressly found that the Coast Guard officers were "acting in the capacity of Customs agents rather than Coast Guardsmen." Id. at 1056. While only Coast Guardsmen boarded in Guillen-Linares, Customs completely directed the actions of the Coast Guard officers who knew little of the operation. Customs, which had been working on the case for some time, merely informed the Coast Guard that it might need the latter's aid later that day in a possible boarding. Customs never explained to Coast Guard officers the facts underlying its suspicion that the vessel involved contained illegal drugs. The Coast Guard did not begin surveillance or boarding until directed to by Customs. Guillen-Linares I, 636 F.2d at 78-79. In this case, by contrast, the district court made a contrary finding, Coast Guard Lieutenant Venckus participated in the planning of the mission, and Coast Guardsman Farley had some input in the decision to board.
 
 
 11
 Judged under the Coast Guard boarding statute, 14 U.S.C.A. Sec. 89(a), the legality of the boarding and of the subsequent search, seizure and arrest is unchallenged by any defendant. Although the district court held, and the government's brief argues, that the boarding could be sustained under Customs authority alone, we need not decide this more difficult issue.
 
 
 12
 Once legally on board the "Carol," Officer Farley asked to see the vessel's identification papers, which the boat's skipper, Frank Williams, could not produce. Farley then, with Williams' permission, began looking for the hull identification number, which the crew was unable to locate. In the course of the documentation inspection, Farley received Williams' consent to open the forward hatch, which revealed numerous bales of marijuana. Since Farley, who had the right to be on the vessel, was in the process of a legitimate documentation inspection, the marijuana he discovered came within the plain view doctrine. See United States v. Jonas, 639 F.2d at 203; United States v. Hillstrom, 533 F.2d at 210. Accordingly, law enforcement officials had probable cause to search the remainder of the "Carol," seize the vessel, and arrest its crew. See United States v. Clark, 664 F.2d at 1175; United States v. Jonas, 639 F.2d at 203.
 
 II. Sufficiency of the Evidence
 
 13
 In a bench trial, the eight defendants were convicted of possessing 27,520 pounds of marijuana on board a United States vessel with intent to distribute, 21 U.S.C.A. Sec. 955a(a); possessing the marijuana with intent that it be unlawfully imported into the United States, id. Sec. 955a(d); and conspiracy to commit the two substantive offenses. Id. Sec. 955c. In addition, Frank and David Williams were convicted of possessing the marijuana on board a vessel with intent to distribute, id. Sec. 955a(b), a statutory provision applicable only to American citizens.
 
 
 14
 In challenging the sufficiency of the evidence to convict them of these charges, defendants essentially argue that the government established nothing more than their presence on a 71-foot vessel laden with thousands of pounds of marijuana. According to the defendants, the prosecution failed to prove their knowledge of the vessel's cargo, their intent to import and distribute the marijuana, and their participation in a conspiracy to achieve those illegal objectives.
 
 
 15
 In assessing this argument, we must view the evidence in the light most favorable to the government, the prevailing party below, taking all inferences in its favor. See Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The standard of review is whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." United States v. Bell, 678 F.2d 547, 549 (5th Cir. Unit B) (en banc), aff'd 51 U.S.L.W. 4749 (U.S. June 14, 1983).
 
 
 16
 Despite the paucity of direct testimony, the district court could reasonably have found that all eight defendants knew the "Carol's" cargo was marijuana. The large quantity of marijuana itself, which 12 government stevedore officers needed four hours to unload, tends to support an inference of knowledge. See United States v. Mazyak, 650 F.2d at 790-91 & n. 2 (5th Cir.1981) (fact finder could infer crew's knowledge of cargo based on 14,611 pounds of marijuana on board a 42-foot vessel during a 19-day voyage). Coast Guardsman Farley and the junior Customs officer who accompanied him in the boarding testified that they smelled the odor of marijuana almost immediately after arriving on board. See United States v. Stuart-Caballero, 686 F.2d 890, 893 (11th Cir.1982) (crew members had to be aware of marijuana based on its pervasive odor), cert. denied, --- U.S. ----, 103 S.Ct. 1202, 75 L.Ed.2d 444 (1983). Although a shrimping vessel, the "Carol" lacked any rigging for shrimping, negating an inference that the crew believed the purpose of their trip was to fish. See United States v. Bustos-Guzman, 685 F.2d 1278, 1281 (11th Cir.1982). Finally, direct evidence did exist to establish Frank Williams' knowledge of the marijuana. Prior to Farley's discovery of the marijuana, Williams truthfully told the Coast Guard officer of the content of his cargo.
 
 
 17
 The district court also reasonably could have inferred for each defendant an intent to import and distribute, and participation in an unlawful conspiracy. In a series of drug-smuggling cases involving boats, this Court has eschewed the need for direct evidence of intent and criminal conspiracy. E.g., United States v. Miller, 693 F.2d 1051, 1053 (11th Cir.1982) (conspiracy may be proved by circumstantial evidence); cf. United States v. Bustos-Guzman, 685 F.2d at 1280 (possession of contraband may be proved by circumstantial evidence). We have indicated that a large amount of marijuana is sufficient to support a finding of intent to distribute. United States v. Miller, 693 F.2d at 1054; United States v. Mazyak, 650 F.2d at 791; United States v. Shelnut, 625 F.2d at 62. Under our decisions, participation of crew members in a conspiracy may be inferred from a fairly lengthy voyage, a large quantity of marijuana, and a close relationship between captain and crew which can be inferred from the length of the voyage and the size of the vessel. United States v. Munoz, 692 F.2d 116, 118-19 (11th Cir.1982); United States v. Freeman, 660 F.2d 1030, 1035 (5th Cir.1981), cert. denied, --- U.S. ----, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982); United States v. Mazyak, 650 F.2d at 790-91; United States v. DeWeese, 632 F.2d at 1272. These factors are also present in this case. The size of the crew, which defendants claim is relevant to the close relationship between skipper and crew, is no larger than in Munoz, and the quantity of marijuana is greater than in Mazyak. As in Freeman, this case involves a large shrimping vessel. Although the precise length of the voyage is not clear from the record, all the evidence suggests a starting point in Colombia or Panama, which implies a voyage of several days as in Freeman and Munoz. None of the defendants dispute that the final destination of the vessel and cargo was the Florida Gulf coast. A chart of the Gulf of Mexico found in Frank Williams' chambers included a marking for a point off Ft. Myers, Florida. Cf. United States v. Freeman, 660 F.2d at 1035 (navigational charts and tidal table for Tarpon Springs, Florida provide evidence of American destination).
 
 
 18
 Defendants principally rely upon United States v. Ferg, 504 F.2d 914 (5th Cir.1974). In Ferg, we overturned a conviction for possession of marijuana with intent to distribute where the only incriminating evidence was the defendant's presence, as a passenger, in a car that had marijuana hidden in it. We have previously distinguished Ferg in the context of vessels laden, as here, with tons of marijuana. United States v. Freeman, 660 F.2d at 1036; United States v. Alfrey, 620 F.2d 551, 556 (5th Cir.), cert. denied, 449 U.S. 938, 101 S.Ct. 337, 66 L.Ed.2d 160 (1980). In this situation, there is more than "mere presence." United States v. Stuart-Caballero, 686 F.2d at 894; United States v. Bustos-Guzman, 685 F.2d at 1280; United States v. Riker, 670 F.2d 987, 989 (11th Cir.1982); United States v. Freeman, 660 F.2d at 1036; United States v. Alfrey, 620 F.2d at 556. The government here made out at least a prima facie case, which defendants failed to rebut with any evidence of a purpose for the trip other than drug smuggling.
 
 III. Admission of David Williams' Letter
 
 19
 The district court admitted into evidence a letter sent by defendant David Williams, following his arrest, to the United States Marshal for delivery to the Drug Enforcement Agent in charge of his case. In the letter Williams expressed awareness of the details of a major smuggling operation, and offered to cooperate with the government. The only condition set forth was: "[I]n return there are some things that I want." The defendant did not testify concerning this letter. Williams contends the admission of the letter violated Fed.R.Evid. 410(4) and Fed.R.Crim.P. 11(e)(6)(D). Relating to plea discussions, these identical rules virtually prohibit the admission in any civil or criminal proceeding of:
 
 
 20
 any statement made in the course of plea discussions with an attorney for the government [prosecuting authority] which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.
 
 
 21
 Williams' letter simply does not come within the terms of the Rules. First, no plea negotiations were underway. Williams did not offer to plead guilty. See United States v. Robertson, 582 F.2d 1356, 1369 (5th Cir.1978) (en banc). Second, the letter was not addressed to an attorney for the government. The accompanying commentary indicates that the Rules' exclusion does not extend to statements made to law enforcement agents, as distinguished from government counsel. See Fed.R.Crim.P. 11(e)(6) advisory committee note (1979 amendment) (indicating that United States v. Herman, 544 F.2d 791 (5th Cir.1977), is no longer viable). Defendant argues no other basis for exclusion, nor do we discern one.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Floyd R. Gibson, U.S. Circuit Judge for the Eighth Circuit, sitting by designation