**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George Kirk PURVIS, Barbara Jean
Solomos, Defendants-Appellants.**

**No. 84–5876
Non-Argument Case.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 14, 1985.

Dempsey & Goldsmith, P.A., Bernard H. Dempsey, Jr., Orlando, Fla., for Purvis and Solomos.

Stanley Marcus, Amelia Gomez, Linda Collins-Hertz, Nancy Worthington, David Leiwant, Asst. U.S. Attys., Miami, Fla., for U.S.

Before TJOFLAT, HILL and ANDERSON, Circuit Judges.

PER CURIAM:

Appellants were convicted of possession with intent to distribute marijuana under 21 U.S.C.A. § 955a(a), after the Coast Guard discovered approximately 3300 pounds of marijuana on the vessel in which they were traveling. Appellants appeal their convictions on two grounds: (1) that the search and seizure of the vessel exceeded the Coast Guard's statutory authority and was unconstitutional and, thus, the marijuana seized by the Coast Guard should have been suppressed at trial; and (2) that the government's alleged failure to comply with Fed.R.Crim.P. 5(a) requires that the indictments against appellants be

dismissed. We agree with the district court's decisions both with respect to the motion to suppress and the Rule 5(a) motion. Therefore, we affirm the convictions.

## A. SEARCH AND SEIZURE

 Under the law of this circuit, the Coast Guard has the power under 14 U.S. C.A. § 89(a) to "stop and board any American flag vessel anywhere on the high seas in the complete absence of suspicion of criminal activity." *United States v. Williams,* 617 F.2d 1063, 1075 (5th Cir.1980) (en banc) (indicating that § 89(a) has been held constitutional);[1] *see also United States v. Kubiak,* 704 F.2d 1545, 1547 (11th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 163, 78 L.Ed.2d 149 (1983); *United States v. Marino-Garcia,* 679 F.2d 1373, 1385 (11th Cir.1982), *cert. denied sub nom., Pauth-Arzuza v. United States,* 459 U.S. 1114, 103 S.Ct. 748, 74 L.Ed.2d 967 (1983). Since it is undisputed that appellants' vessel was of United States registry and was stopped while in international waters, the appellants have no cause to complain of the initial seizure and boarding of the vessel. We also find that the search conducted by the Coast Guard was reasonable within the meaning of the Fourth Amendment. Based on the uncontradicted testimony of Coast Guard First Mate Royce, the district court found as fact that from where Royce stood immediately after boarding the bales of what appeared to be (and later proved to be) marijuana could be seen in the vessel's cabin through an open door. Thus, the search was reasonable because the marijuana was in Royce's plain view from a vantage point in which Royce was "lawfully entitled to be." *United States v. Arrendendo-Hernandez,* 574 F.2d 1312, 1314 (5th Cir.1978); *see Coolidge v. New Hampshire,* 403 U.S. 443, 464–72, 91 S.Ct. 2022, 2037–41, 29 L.Ed.2d 564 (1971) (explaining plain view doctrine). The fact that Royce used a flashlight to see into the open cabin does not undermine the government's reliance on the plain view doctrine. *Arrendendo-*

*Hernandez,* 574 F.2d at 1315 ("In an insufficiently lit area, the use, by an officer, of a flashlight to aid his vision does not transform an otherwise justifiably plain view observation into an illegal search").

Therefore, the search and seizure of the vessel in this case was statutorily authorized and constitutionally legitimate.

## B. FEDERAL RULE OF CRIMINAL PROCEDURE 5(a)

 Under Fed.R.Crim.P. 5(a) "an [o]fficer making an arrest ... without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer...." Appellants argue that the alleged violation of Rule 5(a) required the district court to dismiss their indictments. We need not decide whether dismissal of the indictments would be an appropriate remedy if there had been an "unreasonable delay" within the meaning of Rule 5(a). *See Mallory v. United States,* 354 U.S. 449, 451–54, 77 S.Ct. 1356, 1357–59, 1 L.Ed.2d 1479 (1957) (indicating that the purpose of Rule 5(a) is to prevent oppressive police interrogations and other "third-degree" tactics before bringing the accused in front of an officer of the court; the remedy was the exclusion of evidence which had been gained during the delay by the use of such tactics); *McNabb v. United States,* 318 U.S. 332, 345, 63 S.Ct. 608, 615, 87 L.Ed. 819 (1943) ("to permit such evidence to be made the basis of a conviction in the Federal courts would stultify the policy which Congress has enacted into law"); *United States v. Mendoza,* 473 F.2d 697, 702 (5th Cir.1973) ("a violation of the rule renders the evidence obtained per se inadmissible"). Under the facts and circumstances of this case, we find that there was no "unnecessary delay."

Five days elapsed from the time appellants were arrested at sea until they were

---

**1.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decision of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

brought in front of a federal magistrate. After the arrests, the Coast Guard cutter did not proceed directly to Key West, Florida, the nearest United States port, but rather continued its normal law enforcement patrolling activities. In addition, the vessel stopped for approximately eight hours to attempt to sink an abandoned vessel.

Approximately three days after the arrests, the Coast Guard cutter was met by a Coast Guard patrol boat and appellants were transferred to a patrol boat. The patrol boat then transported appellants to Key West, arriving there one day later or approximately four days after the arrests had been made. They arrived in the late afternoon and the federal magistrate was out of town. They spent that night in jail and were arraigned the next day at approximately two o'clock in the afternoon.

In determining whether there has been a Rule 5(a) violation, we must naturally look at the reasons for the delay. Evidence taken in the district court indicates that appellants were arrested on the high seas approximately 350 miles from Key West and that even if appellants had been brought directly by ship from the point of arrest to Key West, the trip would have taken between 35 and 72 hours.[2] Therefore, a large part of the delay was necessitated by the fact that the arrest was made so far from port on the high seas. Moreover, the delay of less than one day after arriving at Key West was reasonable because of the magistrate's brief absence.

Our resolution of this case is guided by the former Fifth Circuit's decision in *United States v. Odom*, 526 F.2d 339, 342–43 (5th Cir.1976). In *Odom*, the appellant was arrested 200 miles from the nearest United States territory. *Id.* at 343. There is no indication in *Odom* that the Coast Guard cutter transporting Odom was in any way delayed by emergencies or other exigent circumstances. Nevertheless, the court held that a five-day delay from time of arrest to time of arraignment was not "unnecessary delay."

Moreover, *Odom* indicates that whether the defendant was mistreated or improperly interrogated should enter into the analysis. *Id.* at 342. The evidence in this case indicates that appellants were not mistreated during the five-day period. While on board the Coast Guard cutter, they were kept handcuffed in a semi-sheltered area on the deck of the Coast Guard vessel. The arrests took place during June and there is no indication that the weather was cold or otherwise inclement. Moreover, appellants were fed regularly, given mattresses on which to sleep, and had access to bathrooms. In addition, there is no evidence that there were any improper or coercive interrogations in this case. Appellants were read their rights and interrogated by Coast Guard authorities at some point after the arrests. However, appellants do not press any claims concerning the interrogation. Clearly, the results of any interrogation that may have occurred did not bolster the government's case, which was based solely on the observations made by the Coast Guard authorities who boarded the vessel and on the seizure of the marijuana. *Compare Odom*, 526 F.2d at 343 (incriminating statements were not the product of improper interrogation or coercion during the five-day delay); *see also United States v. Mendoza*, 473 F.2d 697, 702 (5th Cir. 1973) (purpose of Rule 5(a) "is to have a judicial officer advise the defendant of his constitutional rights and thereby to prevent administrative detection without probable cause and to reduce the opportunity for third-degree practices").

On the authority of *Odom* and under the particular facts and circumstances of this case, we conclude that there was no "unnecessary delay" under Rule 5(a).

## CONCLUSION

In light of the foregoing, appellants' convictions are AFFIRMED.

---

**2.** There was a considerable discrepancy in the testimony concerning how long it would have taken the Coast Guard cutter to proceed directly from the point of arrest to Key West. There was testimony to the effect that the Coast Guard cutter's speed was considerably diminished because it had appellants' marijuana-laden vessel in tow.