**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roldan GUILLEN–LINARES, Sergio Delrio-Buentes, Tomas Gonzalez, Felix Valle, Raul Delrio-Boquet and Raul Peralta, Defendants-Appellants.**

No. 78–5630.

United States Court of Appeals,
Fifth Circuit.

April 27, 1981.

George L. Cardet, Miami, Fla., for Guillen-Linares.

Anthony F. Gonzalez, Bennie Lazzara, Jr., Richard Lazzara, Tampa, Fla., for Delrio-Buentes, Gonzalez & Valle & Delrio-Boquet.

Stephen Cowen, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before COLEMAN, TJOFLAT and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

This case is before us again following the district court's compliance with our remand order. Based upon the additional findings that the district court has submitted, we reverse appellants' convictions.

**I**

Appellants, all crew members of the shrimping vessel Miss Port Canaveral, were tried and convicted of conspiracy to possess marijuana with intent to distribute, 21 U.S.C. § 846 (1976), and of possession of marijuana with intent to distribute, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (1976). The evidence used to convict appellants was obtained through a Coast Guard boarding of their vessel while it was anchored on the inland waters of Tampa Bay.

Briefly [1], the pertinent facts of this case are as follows. On April 27, 1978, the U.S. Customs Service in Tampa, Florida, contacted the U.S. Coast Guard's St. Petersburg group. At that time, Customs arranged for Coast Guard assistance in surveying a particular vessel anchored in upper Tampa Bay. Customs specifically alerted the Coast Guard that it might call upon the Coast Guard to board this vessel, subsequently identified as the Miss Port Canaveral.

Later that day, Customs requested the Coast Guard to proceed to the vessel's vicinity to maintain surveillance and to advise Customs of any observations. After an uneventful period of observation, during which the Coast Guard and Customs maintained communication, Customs advised the Coast Guard to board the Miss Port Canaveral. This boarding resulted in the discovery of marijuana, and led to the subsequent conviction of the crew.

It is undisputed that, during the course of this operation, Customs never informed the Coast Guard of any facts underlying its desire to observe and board the Miss Port Canaveral. Furthermore, the district court found that the Coast Guard's surveillance revealed "nothing inherently suspicious about the configuration or presence of the vessel [the Miss Port Canaveral] at the time in question . . . ." Record Excerpts at 46. Indeed, the record is devoid of any information about the movements of, or activities aboard, the Miss Port Canaveral; the record merely shows that at all relevant times the ship was anchored on the inland waters of Tampa Bay, two miles outside the nearest shipping lane.

Appellants base their appeal on this lack of suspicious circumstances. Because the boarding was initiated in the absence of articulable cause, they assert that it was accomplished in violation of their fourth amendment right to be free of unreasonable searches and seizures. It follows, they assert, that all evidence obtained as a result of this unwarranted intrusion must be suppressed.

In the proceedings below, the appellants moved to suppress the evidence resulting from the search. The district court found that

> The Coast Guard was there, according to the testimony of all of the witnesses, at the request and suggestion or direction, if you will, of Customs officers, who by inference, presumably, had some suspicion with regard to the activities of the PORT CANAVERAL, but that has never been demonstrated or articulated on the record . . . .

Record Excerpts at 44–45. Despite finding a lack of articulated suspicion, however, the court held that the boarding was valid under 14 U.S.C. § 89(a) (1976) [2], the statute authorizing the Coast Guard to board and inspect all vessels "subject to the jurisdiction, or to the operation of any law, of the

---

1. A more complete recitation of the facts of this case may be found in *United States v. Guillen-Linares*, 636 F.2d 78 (5th Cir. 1981). The facts included here are merely those essential to a clear presentation of the determinative issue of the case.

2. Section 89(a) reads:

    (a) The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the

vessel and use all necessary force to compel compliance. When from such inquiries, examination, inspection, or search it appears that a breach of the laws of the United States rendering a person liable to arrest is being, or has been committed, by any person, such person shall be arrested or, if escaping to shore, shall be immediately pursued and arrested on shore, or other lawful and appropriate action shall be taken; or, if it shall appear that a breach of the laws of the United States has been committed so as to render such vessel, or the merchandise, or any part thereof, on board of, or brought into the United States by, such vessel, liable to forfeiture, or so as to render such vessel liable to a fine or penalty and if necessary to secure such fine or penalty, such vessel or such merchandise, or both, shall be seized.

United States." Therefore, the court denied the motion to suppress.

Appellants have contended consistently that the boarding in question should be viewed, pursuant to 14 U.S.C. § 89(b) (1976), as one accomplished by Customs through the agency of the Coast Guard[3], and that its legality should therefore be measured by reference to 19 U.S.C. § 1581(a) (1976), the Customs Service boarding authorization statute.[4] Because of the potential for differing approaches to the legality of this boarding, we remanded the case to the district court for a finding of whether the Coast Guard boarded as Coast Guardsmen or as officers of the Customs. The district court has found "that the individuals in the boarding party acted under the direction of the Customs Service and, in the circumstances of this case, were acting in the capacity of Customs agents rather than Coast Guardsmen." Order of January 28, 1981. The case is, therefore, in a posture suitable for resolution.

## II

The district court has found that it was, in effect, the Customs Service that boarded the Miss Port Canaveral. Accordingly, we must judge the legality of that boarding pursuant to the constitutional standards this circuit has engrafted onto the broad authorization of section 1581(a).[5]

In *United States v. Serrano*, 607 F.2d 1145, 1148 (5th Cir. 1979), *cert. denied*, 445 U.S. 965, 100 S.Ct. 1655, 64 L.Ed.2d 241 (1980), we held that "Customs officers may make an investigatory stop of a vessel on inland waters adjacent to the open Gulf of Mexico under 19 U.S.C.A. § 1581(a) on facts which justify a reasonable suspicion of illegal activity." *See also United States v. Williams*, 617 F.2d 1063, 1072 n. 3 (5th Cir. 1980) (en banc). In *United States v. D'Antignac*, 628 F.2d 428 (5th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1485, 67 L.Ed.2d 617 (1981), we formulated this holding into a test, ruling that the constitutionality of a section 1581(a) boarding in inland waters turns "on one of the following two principles: (1) a border search; or (2) a limited investigatory stop based upon a reasonable suspicion of law violation." *Id.* at 433. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 48 L.Ed.2d 607 (1975); *United States v. Whitaker*, 592 F.2d 826, 829 (5th Cir.), *cert. denied*, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979). *See also United States v. Stanley*, 545 F.2d 661 (9th Cir. 1976), *cert. denied*, 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978).

It is clear from the record before us that the boarding of the Miss Port Canaveral did not constitute a border search. Thus, the issue is whether, absent any articulated facts or circumstances which might have

---

**3.** Section 89(b) authorizes the Coast Guard to act as agents of the Customs Service. That provision reads:

> (b) The officers of the Coast Guard insofar as they are engaged, pursuant to the authority contained in this section, in enforcing any law of the United States shall:
> (1) be deemed to be acting as agents of the particular executive department or independent establishment charged with the administration of the particular law; and
> (2) be subject to all the rules and regulations promulgated by such department or independent establishment with respect to the enforcement of that law.

**4.** Section 1581(a) reads:

> § 1581. Boarding vessels
> (a) Customs officers
> Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the cus-

toms waters or, as he may be authorized, within a customs-enforcement area established under the Anti-Smuggling Act [19 U.S.C. 1701 et seq.], or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

**5.** *See Almeida-Sanchez v. United States*, 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973) ("It is clear, of course, that no Act of Congress can authorize a violation of the Constitution. But under familiar principles of constitutional adjudication, our duty is to construe the statute, if possible, in a manner consistent with the Fourth Amendment.")

aroused in the customs officers a reasonable suspicion of illicit activity, the seizure of the Miss Port Canaveral was reasonable under the fourth amendment. We find that it was not, and therefore we must reverse the district court's denial of appellants' motion to suppress.[6]

The decision of the district court is

REVERSED.

COLEMAN, Circuit Judge, concurring specially.

With misgivings about the wisdom and correctness of this decision, I concur. I do so because the result appears to be mandated by our prior decisions, which a panel has no power to change. I confess my antipathy to barriers raised by the judiciary to the effective enforcement of laws designed to curb illegal drug traffic which, *without doubt*, is one of the most deadly menaces confronting this Country today.

Under the terms of Section 89(a) the Coast Guard is statutorily empowered to board any vessel lying in United States waters to inspect documentation. Such a boarding is not a traditional search or seizure. Furthermore, there could hardly be much expectation of privacy in what is left in plain view of sight or senses before such a boarding takes place.

There is no real difference here between the boarding of the vessel and a search of one's person and effects when boarding a commercial airplane, except that all intended airplane passengers are searched whereas all vessels are not. Yet, the illicit drug menace threatens thousands, perhaps millions who will never board a commercial plane.

*Canaveral* had no documents. The marijuana was in plain view of one looking for the registration number, a procedure which everyone knows is sure to follow the absence of documents. If I were deciding on my own, I would hold that as to the *Canaveral* there was no transgression of the Fourth Amendment. With or without a request, the Coast Guard could board and inspect. Anything thereafter found in plain view was not a search.

Moreover, the exclusionary rule, itself the product of judicial legislation, should be abolished. It is no longer a fortress for the protection of Fourth Amendment rights. Instead, it has been converted into a machine gun in the hands of outlaws, whose conduct makes a Fourth Amendment irregularity look like a Sunday School picnic. Law enforcement officials, Congressmen, Senators, and prosecutors are publicly announcing that the importation of illegal drugs simply cannot be stopped. Of course not, when a direct apprehension such as occurred here can be overturned on such small pebbles. The drug traffickers are happy. Why shouldn't they be? The odds are all tilted in their favor while the law abiding citizen, the mothers and fathers of children in need of protection from the drug menace, stand helpless—all because of a judge-made rule. If this were going on in any other civilized nation we would pronounce it ridiculous, or worse.

If a judge of an inferior court may be so presumptuous as to say so, I think the Supreme Court should be given an opportunity to clarify this clouded field. What does the Fourth Amendment really require in cases like this one?

---

**6.** Because of our resolution of the fourth amendment issue, we do not reach Appellants' contention that the district judge erred in refusing to recuse himself.