BERANEK, Judge.
After denial of his pretrial motion to suppress, appellant was tried and convicted of trafficking in marijuana. He was sentenced to a term of imprisonment of five years, and was ordered to pay a fine of $25,000. We reverse.
On May 16, 1980, United States Customs Patrol Officers Hill and MeGinty were on patrol in the Intercoastal Waterway north of Port Everglades, Florida. They were operating a 27-foot unmarked, ocean racing type vessel. Shortly before noon they observed a 42-foot Chris Craft Sport Fisherman, named “DARLING,” heading north in the Intercoastal Waterway in the vicinity of the Las Olas Bridge. Officer Hill observed that the boat was plowing in the water, there was salt spray all over the boat, the curtain windows of the cabin were closed, the door to the cabin was closed, and the water line was just about even with the water. There were two men on the vessel, *976 both dressed in an attire common for yachtsmen or boating people, and there was fishing gear on board the boat. The Pompano Beach Fish Rodeo was being held on that date, and there were approximately 300 boats in the area, the vast majority of which were sport fishing type boats. Officer Hill ran a computer check on the boat, which came back negative, indicating the vessel was not suspected of being involved in smuggling. Nevertheless, federal officers Hill and McGinty passed the boat and waited for it north of the Sunrise Bridge, about two miles north of where the boat was first observed. When the vessel went underneath the Sunrise Bridge, they pulled up along side the boat and advised that they were Customs Officers. They instructed appellant, who was the captain of the boat, to put the boat in neutral. Officer Hill asked appellant where he had come from and he responded that he had come from out in the ocean. Appellant was then asked who owned the boat, to which he replied he did not know. Officer Hill then boarded the boat for the purpose of a document check of the vessel and a search. After boarding the vessel, he smelled the odor of marijuana. He immediately went to the cabin, opened the door, and observed bales. Appellant was placed under arrest for possession of contraband. For reasons unknown to us, appellant and his companion were turned over to the Fort Lauder-dale Police for prosecution by the State rather than by the Federal Government.
After the hearing on the motion to suppress, the trial court ruled initially that appellant did not have standing to contest the search and seizure. The trial court further concluded that based upon all the circumstances, Officer Hill had reasonable suspicion to make a stop and his entry onto the boat was not illegal. The first issue to be dealt with is standing, because if we determine that appellant lacked standing, his other arguments become moot. Appellant contends that the trial court erred in its determination of no standing in that he, as captain, had a legitimate expectation of privacy on the vessel. United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); State v. Muzevsky, 388 So.2d 21 (Fla. 4th DCA 1980). We agree. The facts show that at the time the Customs Officers stopped the boat, appellant was one of two persons aboard. Appellant was the captain of the boat and was operating it at the time it was stopped. All evidence subsequently elicited showed he had total control and dominion over the boat.
Having determined that appellant had standing to contest the search and seizure, we turn to the question of whether the stop was justified. Officers of the United States Customs Service[1] may stop a vessel on one of two principles, either a border search or a limited investigatory stop based upon a reasonable suspicion of a violation of the law. 19 U.S.C. Section 1581(a); United States v. D’Antignac, 628 F.2d 428 (5th Cir.1980). To meet the requirements of a border search, the official must show with some degree of probability that a vessel recently crossed an international border. United States v. Whitmire, 595 F.2d 1303 (5th Cir.1979). The question is thus whether the United States Customs Officers had sufficient reason to believe that appellant’s boat had recently crossed an international border of the United States. Simply put, was there evidence that the boat had just been in the ocean beyond the three mile limit?
In United States v. Whitmire, supra, two customs officers were on routine patrol in the Intercoastal Waterway in Dade County, Florida, at approximately 8:00 a.m. They observed a 25 foot Nova Boat speeding at an estimated 40 to 45 miles per hour through an inlet connecting the ocean to the inland waterway. The boat was coming from the ocean side but was already inside the shore line when the officers first sighted it. The day was unpleasant for boating; *977 it was overcast, cold, and windy, and the water was choppy. The speeding boat was producing a heavy wake, and each time it came down it threw a large bow spray higher than the boat top. Two males were observed on board and no fishing gear was visible. The boat turned north into the inland waterway and continued on at high speeds past a customs inspection station and sped through a “no wake” zone. The officers observed that the boat was encrusted with salt crystals such as might have formed during an extensive ocean voyage. They noticed that the occupants were wearing brand new orange sweat shirts with “BIMINI” printed across the chest. The Fifth Circuit held:
The instant facts do not fit a border search analysis neatly, since we have consistently required some degree of probability that the vehicle/vessel has crossed the border. In water cases, the true border is an imaginary line three miles off shore. ' Though we have not required the coast guard or customs officers to observe the vessel as it crosses this imaginary line, our precedent generally has required that the officials have articulable facts from which they may reasonably infer that the boat has come from international waters. On our facts, the boat was first sighted inside the coast line and, for all the customs people actually knew, might have been on an early morning cruise up and down the intercoastal canal or outer coast line. At 1307.
Certainly the facts in the Whitmire case are much stronger than those in the present situation. Indeed, in the instant case, the Customs Officers had only two factors indicating possible crossing of an international border: (1) salt spray all over the boat and (2) appellant’s statement that he had been in the ocean. These facts are simply insufficient to support a conclusion that the boat had crossed the three-mile line under the federal precedent cited above. One wonders if evidence was not readily available that 42 foot sport fisherman boats generally fish beyond the three mile limit and that salt spray on the flying bridge of a 42 foot boat would indicate a voyage in open and heavy seas. There was, surprisingly, no attempt to produce such evidence and in view of United States v. Whitemire, supra, and similar precedent we are not prone to judicially notice these facts. We hold that the demonstrated facts possessed by the United States Customs Officers were insufficient to conclude that the boat had recently crossed an international border of the United States. We therefore, hold the stopping and boarding of appellant’s vessel cannot be justified as a valid border search.
We now look to whether the stopping and boarding of appellant’s vessel was based on a showing of articulable suspicion of criminal activity. Here, we have a boat traveling north on the Intercoastal Waterway at 11:00 a.m. on the day of the Pompano Beach Fish Rodeo. The two occupants on board were dressed in boating attire and fishing gear was evident. Consistent with the operation of the cabin air conditioning, the cabin curtains and cabin door were closed. Although slightly bow heavy, the waterline was just about even with the water. The boat had salt spray on it. The boat did not violate any navigational rules and a computer cheek proved negative. These facts simply do not demonstrate a founded suspicion that criminal activity was afoot. See Cacace v. State, 379 So.2d 1306 (Fla. 4th DCA 1980).
Having fulfilled neither of the requirements of 19 U.S.C. Section 1581(a), the stop was not justified. Accordingly, the trial court erred in denying appellant’s motion to suppress. We caution that this decision is not applicable to Florida State authorities. This was a stop by federal officials under federal statutes. Further we conclude that we are bound by the specifically cited federal decisions herein. If we had a free hand we would not so rule.
REVERSED.
WALDEN, J„ and OWEN, WILLIAM C., Jr., Associate Judge, concur.

. It should be noted that these officers were not U.S. Coast Guard personnel and were not involved in a Coast Guard documents check.