GLICKSTEIN, Judge.
This is an appeal by the state from an order suppressing the state’s evidentiary exhibits against appellees; namely, twenty bales of marijuana seized from a high performance boat shortly after it entered the Intracoastal Waterway from the open sea. We remand for clarification.
The evidence shows that in November, 1982, the United States Customs Air Support detail was performing surveillance of the seas which border the State of Florida; and that its plane observed an off-load of drugs fifty miles from Bimini. United States customs agent Lowen responded to this information in the same manner as law enforcement officers would respond to a more conventional BOLO issued as a result of the detection of a crime in progress or a report of its occurrence by the victims. Together with local enforcement officers, he undertook surveillance of a natural spot which the transferees of such off-load would use to enter the inland waters of South Florida; namely, Hillsboro Inlet in Broward County. After over four hours of surveillance, Detective Hurt from Deerfield Beach, working as part of the team, heard a high performance boat approaching shore about 12:30 a.m. and saw it about a mile offshore. He observed it enter the inlet with two white males on board. He testified that he observed agent Lowen then board the boat after it had entered the Intracoastal Waterway. By his account the agent asked to board and to look at the boat, to which the response was “go ahead”; that agent Lowen was told by the operator of the boat, appellee Millet, in English, that he was the captain; that he was coming from Miami; that he was Cuban, not American; and that he did not have immigration papers or passport with him. On cross-examination, he testified that he recalled seeing the driver’s license of appellee, Gonzalez.
Agent Lowen testified that the boat with which he became involved was a 25-foot Gatto, a go-fast type vessel with twin inboard-outboards; and that the boat had raised decks, which is very common on narcotics boats so that illegal drugs could be stored in the space provided by raising the decking five to seven inches. He further testified that appellee Millet said the boat’s occupants were not American citizens but were from Cuba and that they had no immigration papers; that he stopped the boat and directed the occupants to dock at the Hillsboro Marina for boarding, which they did; that at the dock, appellee Millet gave him the boat’s registration; that he then proceeded to search the boat, starting at the bow; that a “cabin hull,” ordinarily capable of being opened, was covered by carpet; and that he lifted the carpet and saw a bale of marijuana. He then arrested appellees and inventoried twenty bales. On cross-examination he testified as follows:
Q. At what point in time did you decide to search the vessel?
*578 A. When I asked him where they were from. They told me Cuba. And I asked him if they had any immigration papers aboard. They said, “No.”
A. I believed there could be any breach of law. I didn’t know it was illegal aliens or what.
Q. Isn’t it true you decided to search that boat and you thought it had contraband on it at that time?
A. Contraband comes in many different forms. It could have been anywhere from currency to drugs to illegal aliens. It could have been anything.
Q. So you expected when you searched that vessel you’re going to find marijuana that came from an off-load; didn’t you?
A. At that point it could have been. It wasn’t my only concern.
Q. But it was in your mind; wasn’t it?
A. Yes. It was in my mind.
Q. The truth is that you wanted to search the cabin and you were going to search the cabin, and you were searching for marijuana; correct?
A. I was searching for any breach of law, whether it was illegal aliens, narcotics or anything.
Appellee Millet did not testify at the hearing nor has he filed a brief in this court. Appellee Gonzalez both testified and filed a brief. At the hearing, appellee Gonzalez testified that he was a United States citizen; that he displayed his driver’s license, social security card and voter’s registration to agent Lowen; that appellee Millet, who does not speak English, produced his driver’s license; that he did not know whether Millet was a citizen of the United States; and that the term “immigration” never came up in discussion at the scene.
The trial court made the following conclusions:
It is, upon consideration, found by the Court that the Defendants have standing to contest the search, and that there was no probable cause to search the boat. The search and seizure of the marijuana from the boat was illegal. There was no evidence that the boat had crossed any border, so as to make it a permissable [sic] border search. Neither were there facts and circumstances within the officers’ knowledge, and of which they had reasonable trustworthy information, sufficient in themselves to warrant a man of reasonable caution to believe that an offense had been or was being committed.
The governing principle as to the initial stop of the boat is contained in State v. Marzano, 418 So.2d 1159 (Fla. 4th DCA 1982):
A stop of a vessel may be justified if there is evidence that the vessel has recently crossed the border or there is evidence giving rise to an articulable suspicion that the defendants were engaged in illegal activity. State v. Doyle, 409 So.2d 1168 (Fla. 3d DCA 1982); State v. Zafra, 408 So.2d 745 (Fla. 3d DCA 1982); Morales v. State, 407 So.2d 321 (Fla. 3d DCA 1981).
See also United States v. Guillen-Linares, 643 F.2d 1054, 1056 (5th Cir.1981); and United States v. Serrano, 607 F.2d 1145 (5th Cir.1979), cert. denied, 445 U.S. 965, 100 S.Ct. 1655, 64 L.Ed.2d 241 (1980). While no border crossing was established by evidence which met the standards recited in the federal cases,[1] there was ample evidence giving rise to the requisite articulable suspicion, originating with the quasi-BOLO following the airborne observation of a crime in progress and continuing with the observations later that night at the scene of the stop.
What we do not know is the predicate for the trial court’s conclusion that there was no probable cause, as there had to be,[2] for a proper subsequent search and seizure, notwithstanding the propriety of *579 the initial stop. See State v. Casal, 410 So.2d 152 (Fla.1982) and Tingley v. Brown, 380 So.2d 1289 (Fla.1980). Accordingly, we remand for clarification with direction that specific findings be made.
DOWNEY and BERANEK, JJ., concur.

. See the observations of this court in Lavely v. State, 422 So.2d 975 (Fla. 4th DCA 1982).

. There was no marijuana in plain view nor was there the odor thereof when agent Lowen boarded the boat.