**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Antonio IGLESIAS–URANGA, Alvin L.**
**Gardner and Ezequiel Gomez-Castro,**
**Defendants-Appellants.**

**No. 82–5639**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 3, 1984.

Certiorari Denied April 16, 1984.
See 104 S.Ct. 1915.

Nurik, O'Donnell & Lazarus, John F. O'Donnell, Fort Lauderdale, Fla., for defendants-appellants.

Stanley Marcus, U.S. Atty., Robert F. Dunlap, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY and TJOFLAT, Circuit Judges.

PER CURIAM:

Convicted of marijuana-related offenses in violation of 21 U.S.C.A. §§ 955a and 955c, Alvin Leon Gardner, Antonio Iglesias-Uranga and Ezequiel Gomez-Castro appeal on the sole ground that the district court should have suppressed evidence which resulted from a search of their vessel by the Coast Guard pursuant to 14 U.S.C.A. § 89(a). We affirm on the basis of our recent opinion in *United States v. Ceballos,* 706 F.2d 1198 (11th Cir.1983).

On December 11, 1981, the United States Coast Guard Cutter CAPE FOX was on routine law enforcement patrol in the area of Pavilion Key, Cape Romano and Cape Sabel, off the West Coast of Florida. The main office instructed the CAPE FOX to contact a Drug Enforcement Administration airplane conducting surveillance activities. The CAPE FOX contacted the DEA airplane and received instructions from the pilot of that airplane to divert from its present course, and to intercept and board a vessel known as the MISS SELENA III. The DEA pilot provided the CAPE FOX with the coordinates and location of the MISS SELENA III.

The DEA pilot did not provide the CAPE FOX with any other information or any reason why the DEA had directed it to divert from its present course, and to intercept and board the MISS SELENA III.

Approximately two and one half hours later the Coast Guard spotted the MISS SELENA III on the high seas. The Coast Guard observed the name of the vessel, that its home port was Key West, Florida, and the registry numbers. The Coast Guard chief also noticed that the vessel had a repainted waterline so it would not appear to be low in the water, the fishing nets were rolled up, and there was no visible fishing activity. The chief contacted the other vessel by radio, identified himself as the Coast Guard and advised that the Coast Guard was going to board the vessel. The decision to board the vessel was made by the Coast Guard captain.

Five Coast Guard personnel boarded the MISS SELENA III. The chief advised the crew that he was making a check for compliance with federal rules and regulations. The Coast Guard chief checked the vessel's papers and found them to be in order. He testified, however, that he had detected the smell of marijuana as soon as he stepped on board. During a routine walk of the vessel to make sure all persons were on the stern as instructed, a seaman observed marijuana. The Coast Guard chief asked to see the main beam number to verify the vessel's permanent number. When he went into the main cargo hold, he observed numerous bales of marijuana and detected its strong odor. The crew was placed under arrest and the vessel seized. A complete search of the vessel was then conducted during which more marijuana was found.

The appellants, relying upon *United States v. Guillen-Linares,* 643 F.2d 1054, 1056–57 (5th Cir.1981), argue that the Coast Guard was acting under the direction of and as the agents of the DEA when the stop and search were made. Therefore, it is asserted, the stricter standard of probable cause must be applied to the search rather than the less restrictive standard of the Coast Guard boarding statute, 14 U.S.C.A. § 89(a). In *Guillen-Linares,* however, the district court found as a fact that the Coast Guard officers were acting in the capacity of Customs agents rather than as Coastguardsmen. *Id.* at 1055–56.

In *United States v. Jonas,* 639 F.2d 200, 202 (5th Cir. Unit B 1981), the Fifth Circuit upheld a search where the district court found that the Coast Guard had a dual purpose for boarding and inspecting a vessel: to look for drugs and to make a safety and document inspection.

In a recent case, this Court had the opportunity to examine an allegedly pretextual search by the Coast Guard. In *United States v. Ceballos,* 706 F.2d 1198, 1200 (11th Cir.1983), a Coast Guard officer accompanied three Customs officers aboard a Customs vessel on a mission. They encountered a suspicious vessel in international waters and all agreed that it should be boarded. The uniformed Coast Guard officer boarded first. The district court found that he boarded in the capacity of a Coastguardsman and that the boarding was therefore sustained under § 89(a). This Court, upholding the district court's finding against the clearly erroneous standard of review, affirmed in light of the Coast Guard officer's affirmative decision to board the vessel, his active participation in the boarding, and his compliance with his supervisor's instruction not to engage in any action not authorized by the Coast Guard statute.

In the present case, the district court found that the Coast Guard officer boarded the MISS SELENA III for the dual purposes of checking compliance with safety and registration laws and looking for contraband. The court specifically found that the Coast Guard was not acting as an agent of the DEA and that the captain of the Coast Guard vessel made the ultimate decision to board. These findings are not clearly erroneous. The Coast Guard had only one contact with the DEA and that was to receive the coordinates of the vessel. The Coast Guard boarded alone and no representatives of the DEA were present. The Coast Guard officer found the boat to be suspicious without any contact with or prompting by the DEA.

Once on board, the Coast Guard had a legitimate right to examine the main beam number, and the marijuana found

came within the plain view doctrine. *Ceballos*, 706 F.2d at 1201. The officers then had probable cause to search the vessel, seize it, and arrest the crew. The motion to suppress was properly denied.

AFFIRMED.