**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rodrigo HENAO–CASTANO,
Defendant-Appellant.**

No. 82–6056.

United States Court of Appeals,
Eleventh Circuit.

April 16, 1984.

Robyn J. Hermann, Gary S. Pont, Kenneth E. Cohen, Charles G. White, Asst. Federal Public Defenders, Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Linda Collins Hertz, James G. McAdams, III, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY, HATCHETT and ANDERSON, Circuit Judges.

RONEY, Circuit Judge:

Rodrigo Henao-Castano was convicted of importation and possession of cocaine with intent to distribute in violation of 21 U.S. C.A. §§ 952(a) and 841(a)(1). His appeal was one of several with a similar Fourth Amendment issue decided this day.[1] Henao-Castano was stopped by customs inspectors upon his arrival in Miami on a flight from Colombia. After he refused to permit the inspectors to x-ray his abdomen, he was detained until his fecal matter could be searched. The search disclosed he was carrying cocaine internally. The district court held that the customs inspectors had reasonable suspicion to believe that Henao-Castano was an internal drug carrier and that detaining him until he moved his bowels was a reasonable manner of searching his digestive tract. We affirm.

Henao-Castano arrived at Miami International Airport from Cali, Colombia at around one o'clock in the afternoon on June 8, 1982. A customs inspector noticed him as he deboarded because he "fit[ ] my profile". As Henao-Castano was interviewed by an immigration inspector, the inspector stood nearby and listened to Henao-Castano's answers. He learned that Henao-Castano had come to Miami for an 8 to 10 day vacation and he planned to stay in a hotel but had no reservations. At this point, the inspector took personal charge of Henao-Castano and accompanied him down to the customs inspection area.

During customs inspection, the inspector first checked Henao-Castano's plane ticket, passport, and Customs declaration form. Henao-Castano was questioned closely on his plane ticket because from the inspector's experience he knew that internal drug carriers, or "mules", often do not purchase their own ticket. When asked where his ticket was purchased, Henao-Castano replied, "Colombia". He did not know, however, at what travel agency the ticket had been purchased or how much it cost. He said the ticket was purchased on May the 10th when it actually had been purchased on May the 25th. Finally, he incorrectly claimed the ticket was purchased for cash when it had been a credit transaction.

Examination of Henao-Castano's Customs declaration revealed that his handwriting was poor. This suggested to the inspector that Henao-Castano had received little education. Henao-Castano's passport showed that he was from a small town in Colombia.

Next, the inspector searched Henao-Castano's luggage. Henao-Castano was only carrying one inexpensive suitcase. The suitcase contained a small amount of poor quality clothing but no contraband.

Following the document check and luggage search, the inspector requestioned Henao-Castano on the purpose of his trip. Henao-Castano now explained that he owned an electronic parts store and he was here to check prices on electronic devices such as televisions and radios. Henao-Castano, however, was unable to produce a

1. No. 82–6037 *United States of America v. Padilla,* 729 F.2d 1367.
No. 82–5941 *United States of America v. Pino,* 729 F.2d 1357.
No. 82–5957 *United States of America v. Vega-Barvo,* 729 F.2d 1341.

No. 83–5006 *United States of America v. Mosquera-Ramirez,* 729 F.2d 1352.
No. 83–5064 *United States of America v. Castaneda-Castaneda,* 729 F.2d 1360.
No. 83–5278 *United States of America v. De Montoya,* 729 F.2d 1369.

business card or name any of the stores in Miami he was planning on contacting. He said he would just get in a taxi and ask the taxidriver to take him around. Although he had no credit cards or checks, he was carrying $2000 in cash to cover any purchases he decided to make. When asked how he would get these purchases back to Colombia, Henao-Castano first hesitated and then replied "maybe I take it with me in my suitcase."

The inspector focused his questioning on Henao-Castano's store in Colombia. After determining that Henao-Castano sold Sony, RCA, and General Electric televisions, the inspector asked him where Sonys were made. Henao-Castano answered, "the United States, of course". He responded similarly when asked about Toshiba products. Pointing to a Sony television in the office, the inspector asked what the screen size and model number of the set was. Henao-Castano could answer neither question.

Unhappy with the responses he had received, the inspector searched Henao-Castano's outer garments and then frisked him. Finding nothing, the inspector concluded that Henao-Castano was carrying drugs internally. He then informed Henao-Castano of the *Miranda* rights. The procedure he used was to give him a card with the rights printed on it and to ask him to read it. Henao-Castano proved to be a poor reader further damaging the credibility of his claim to be a businessman.

Shortly thereafter, an agent from the Drug Enforcement Agency arrived and he reinterviewed Henao-Castano. Agreeing with the customs inspector, the agent confronted Henao-Castano with their suspicions and asked if he would consent to an x-ray. He did. Subsequently, Henao-Castano was transported to the hospital.

At the hospital, Henao-Castano refused to sign the medical consent form. At approximately five o'clock p.m. Henao-Castano was shackled to a wheelchair and the agent and the inspector sat back to wait for a bowel movement. Four hours later, Henao-Castano suddenly sat bolt upright in the wheelchair and confessed that he was carrying cocaine internally. He agreed to sign the medical release and was x-rayed. The x-ray showed foreign objects in his abdomen. He immediately began excreting cocaine-filled condoms. A total of eighty-five condoms were collected containing 114 grams of cocaine.

■ At the border, a customs inspector must have a reasonable suspicion that a person is carrying contraband internally before a person's stomach may be searched either by x-ray or by detaining the person until he excretes his stomach's contents. The reasonable suspicion standard requires a showing of articulable facts which are particularized as to the person and as to the place that is to be searched. *United States v. Vega-Barvo*, 729 F.2d 1341 (11th Cir.1984). This standard is easily met in this case. Henao-Castano failed to demonstrate even a rudimentary knowledge about the televisions he claimed he was in Miami to purchase and had no plan for shipping his purchases home other than the implausible idea of putting them in his single poor quality suitcase. These and other responses to questions about his trip and background convinced two experienced customs agents, with knowledge of the circumstances under which internal carriers attempt entry into the United States, that Henao-Castano was indeed an internal carrier. We hold the facts here were sufficient to make the agents' suspicion reasonable under Fourth Amendment standards.

■ On the basis of *United States v. Mosquera-Ramirez*, 729 F.2d 1352 (11th Cir.1984), we hold that the detention of Henao-Castano for four hours was not unreasonable. The use of restraints does not alter that conclusion. Henao-Castano had to be personally monitored for an indefinite period of time. Henao-Castano contends that shackling him to a wheelchair during this period raised the level of indignity of his detention. While this may be so, the need for the security and limited personnel available must be taken into consideration in deciding which cases rise to the level of

a constitutional violation. Shackling Henao-Castano to a wheelchair was a reasonable method of preventing him from attempting to dispose of the contents of his stomach before they could be searched.

AFFIRMED.

HATCHETT, Circuit Judge, dissenting:

I dissent for the reasons stated in *United States v. Vega-Barvo*, 729 F.2d 1341 (11th Cir.1984).