**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Celina Nohemy Giraldo De MONTOYA,
Defendant-Appellant.**

No. 83–5278.

United States Court of Appeals,
Eleventh Circuit.

April 16, 1984.

Kenneth E. Cohen, Charles G. White, Asst. Federal Public Defenders, Miami, Fla., for defendant-appellant.

Frederick R. Mann, Asst. U.S. Atty., Stanley Marcus, U.S. Atty., Linda Collins Hertz, James G. McAdams, III, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY, HATCHETT and ANDERSON, Circuit Judges.

RONEY, Circuit Judge:

Celina Nohemy Giraldo De Montoya was convicted of importation and possession of cocaine with intent to distribute in violation of 21 U.S.C.A. §§ 952(a) and 841(a)(1). Her

appeal was one of several with a similar Fourth Amendment issue decided this date.[1] Montoya was stopped by customs inspectors upon her arrival in Miami on a flight from Colombia. After she refused to permit the inspectors to x-ray her abdomen, she was detained until her fecal matter could be searched. That search disclosed she was carrying cocaine internally. On a motion to suppress, the district court held that the customs inspectors had reasonable suspicion to believe that Montoya was an internal drug carrier and that detaining her until she moved her bowels was a reasonable method of searching her digestive tract. We affirm.

Montoya arrived at Miami International Airport from Bogota, Colombia shortly after midnight. As she passed through customs, she was questioned by a customs inspector as to the purpose of her trip. Montoya told the customs inspector that she was on vacation and this was her first visit to this country. Since Latin America women rarely travel alone, the inspector became suspicious. The inspector's suspicions increased when she learned that Montoya had left a husband and two children at home. In the meantime, the inspector had examined Montoya's wallet and found no pictures of her family, no credit cards, and no personal papers other than a government identification card. There was, however, approximately $1,500 in cash. This amount of cash was significant to the inspector because $1500 was a standard fee paid internal carriers.

Montoya was then taken to a search room for more detailed questioning. Asked about her husband, Montoya said he was an engineer but she was unable to say what type of engineer. The inspector found this claim to be inconsistent with the inexpensive, ill-fitting apparel Montoya was wearing. Although Montoya said her suit was new, it could not be buttoned over her bulging stomach. A search of her luggage revealed all of her personal effects were of poor quality. The condition of Montoya's hands and knees indicated she was used to a life of manual labor, another factor inconsistent with the status of the wife of an engineer. Also revealing was the fact that the condition of her hands was partially disguised by a fresh manicure, a common technique used by internal carriers.

At the same time Montoya was being questioned, a second passenger from the same flight was detained on the suspicion that he was an internal drug carrier. He admitted that he sat next to Montoya on the plane and had conversed with her during the flight. When asked, Montoya said she could not remember who she sat with on the airplane and that she had talked to no one.

Based on the aggregate of her observations and Montoya's appearance and demeanor, the customs inspector concluded that Montoya was probably an internal carrier of cocaine. Montoya was read the *Miranda* rights. She refused to waive them. Nonetheless, denying she had swallowed cocaine, Montoya consented to a x-ray examination. An agent from the Drug Enforcement Administration then questioned Montoya. He also obtained a consent to the x-ray.

After being transported to a local hospital, Montoya changed her mind and refused to sign the hospital's consent form. Montoya was then detained at the hospital so that her next bowel movement could be searched. At 1:00 p.m., just twelve hours after she arrived she excreted a condom containing cocaine. Shortly thereafter, she vomited up several more condoms. Upon advice of a physician, she consented to having another eighty surgically removed. In all, 100 cocaine-filled condoms were collected.

1. No. 82–6037 *United States of America v. Padilla,* 729 F.2d 1367.
No. 82–5941 *United States of America v. Pino,* 729 F.2d 1357.
No. 82–6056 *United States of America v. Henao-Castano,* 729 F.2d 1364.
No. 83–5006 *United States of America v. Mosquera-Ramirez,* 729 F.2d 1352.
No. 83–5064 *United States of America v. Castaneda-Castaneda,* 729 F.2d 1360.
No. 83–5957 *United States of America v. Vega-Barvo,* 729 F.2d 1341.

Montoya contends the contraband was discovered in violation of the Fourth Amendment prohibition against unreasonable searches. At the border, a customs inspector must have reasonable suspicion before a person's stomach may be searched either by x-ray or by detaining the person until he excretes his stomach's contents. The reasonable suspicion standard requires a showing of articulable facts which are particularized as to the person and as to the place that is to be searched. *United States v. Vega-Barvo*, 729 F.2d 1341 (11th Cir.1984).

There were two factors in this case which aroused the suspicions of the customs inspector. First, the inspector perceived there was a discrepancy between the social status the woman claimed and her appearance and personal effects. Numerous facts indicated she came from a low-income family and was thus not the wife of an engineer. Second, Montoya lied about conversations she had had with another suspected internal carrier. Although neither of these factors alone are particularly strong, when viewed in conjunction they amount to the articulably suspicious behavior needed to satisfy the reasonable suspicion test for an x-ray.

Once Montoya refused an x-ray, her detention until natural bodily functions brought forth the fecal matter and stomach contents which the officials were entitled to search did not violate the Constitution under the reasoning in *United States v. Mosquera-Ramirez*, 729 F.2d 1352 (11th Cir.1984).

AFFIRMED.

HATCHETT, Circuit Judge, concurring specially:

I concur specially because the customs officials had reasonable suspicion sufficient to detain the suspect past the reasonable time necessary for questioning.