SCHWARTZ, Chief Judge.
The appellee Torres was the operator of a speedboat[1] which was seen entering United States waters from near Bimini by Florida marine patrolmen. They boarded and inspected the vessel, later gave Torres a “ticket” for a minor equipment violation, and, with his consent, escorted the boat to a gas dock at Haulover Beach in Dade County. While still at sea, the Florida officers “called customs” but, because of *1327 the press of other business, a customs agent did not arrive for some time after the vessel had been tied up at Haulover. Although the border search of the vessel which was thereafter conducted by the customs agent was concededly valid, 19 U.S.C. §§ 1581(a), 1582 (1985); Morales v. State, 407 So.2d 321, 327-28 (Fla. 3d DCA 1981), the trial court suppressed the 300 lbs. of marijuana it yielded on the ground that the Florida police had improperly “detained” the vessel for an unreasonably long period awaiting customs.[2]
We reverse. It is clear that Torres, as the operator of a vessel which entered the United States after crossing an international border, was statutorily obliged himself not merely to report his arrival to the customs service, 19 U.S.C. § 1459 (1985),[3] but to present the cargo for the agent’s inspection, 19 U.S.C. § 1460 (1985)[4]; moreover, the vessel could not be unloaded without' the agent’s express permission, 19 U.S.C. § 1461 (1985).[5] Obviously, neither of the latter events can occur until the agent is present, however long it takes him to get there. Thus, neither Torres nor anyone else could legally do anything with respect to the boat which was in any way different from what actually occurred; the vessel could not be moved nor its contents disposed of until customs *1328 reached the scene. Since no protectable “rights” as to the subject of the search were therefore infringed upon or deprived by the Florida officers[6] (and it is admitted that the search itself was appropriate), the cannabis should not have been suppressed.
Reversed.

. Our disposition makes it unnecessary to determine if we agree with the decisions that, since *1327 Torres operated but did not own the boat, he had no legitimate expectation of privacy in the concealed compartment where the cannabis was found and thus could not challenge even an unlawful search of that area. See United States v. Lopez, 761 F.2d 632 (11th Cir.1985); United States v. SardaVilla, 760 F.2d 1232 (11th Cir.1985).

. The appellee’s primary reliance, which is on United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) and its progeny, is totally mis-Placed. Place concerns only an un-authorizedly lengthy restriction upon the freedom of movement of the individual defendant either personally or by retention of his personal effects. In this case, whether or not Torres himself was improperly held at the scene— which we do not decide — is totally irrelevant to the only issue before us, the propriety of the search of the vessel. See Zukor v. State, 488 So.2d 601, 606 n. 9 (Fla. 3d DCA 1986) (citing United States v. Martell, 654 F.2d 1356 (9th Cir.1981), cert. denied, 463 U.S. 1213, 103 S.Ct. 3551, 77 L.Ed.2d 1397 (1983), holding that too lengthy detention of defendant irrelevant to propriety of search of luggage based on probable cause).

. Section 1459 provides:
§ 1459. Contiguous countries; report and manifest
The master of any vessel of less than five net tons carrying merchandise and the person in charge of any vehicle arriving in the United States from contiguous country, shall immediately report his arrival to the customs officer at the port of entry or customhouse which shall be nearest to the place at which such vessel or vehicle shall cross the boundary line or shall enter the territorial waters of the United States, and if such vessel or vehicle have on board any merchandise, shall produce to such customs officer a manifest as required by law, and no such vessel or vehicle shall proceed farther inland nor shall discharge or land any merchandise, passengers, or baggage without receiving a permit therefor from such customs officer.

. Section 1460 provides:
§ 1460. Penalties for failure to report or file manifest
The master of any vessel or the person in charge of any vehicle who fails to report arrival in the United States as required by section 1459 of this title, or if so reporting proceeds farther inland without a permit from the proper customs officer, shall be subject to a penalty of $100 for each offense. If any merchandise is imported or brought into the United States in any vessel or vehicle, or by any person otherwise than in a vessel or vehicle, from a contiguous country, which vessel, vehicle, or merchandise is not so reported to the proper customs officers; or if the master of such vessel or the person in charge of such vehicle fails to file a manifest for the merchandise carried therein, or discharges or lands such merchandise without a permit; such merchandise and the vessel or vehicle, if any, in which it was imported or brought into the United States shall be subject to forfeiture; and the master of such vessel or the person in charge of such vehicle, or the person importing or bringing in merchandise otherwise than in a vessel or vehicle, shall, in addition to any other penalty, be liable to a penalty equal to the value of the merchandise which was not reported, or not included in the manifest, or which was discharged or landed without a permit.

. Section 1461 provides:
§ 1461. Inspection of merchandise and baggage
All merchandise and baggage imported or brought in from any contiguous country, ex *1328 cept as otherwise provided by law or by regulations of the Secretary of the Treasury, shall be unladen in the presence of and be inspected by a customs officer at the first port of entry at which the same shall arrive; and such officer may require the owner, or his agent, or other person having charge or possession of any trunk, traveling bag, sack, valise, or other container, or of any closed vehicle, to open the same for inspection, or to furnish a key or other means for opening the same.

. Even if, contrary to this analysis, there were some restriction of a constitutionally protected right or interest in the movement or contents of the vessel, we would likely not hold that the delay allegedly caused by the state officers was "unreasonable” and therefore constitutionally impermissible. Thus, it has been expressly held that border stops of one hour or more even of individuals effected by local police to await the arrival of customs officers are valid. United States v. Lavado, 750 F.2d 1527 (11th Cir.1985), cert. denied, — U.S. -, 106 S.Ct. 789, 88 L.Ed.2d 768 (1986); see United States v. Moore, 638 F.2d 1171 (9th Cir.1980), cert. denied, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981); see also United States v. Mosquera-Ramirez, 729 F.2d 1352 (11th Cir.1984) (twelve hour detention of internal drug smuggler until nature revealed what an x-ray would have shown not unreasonable); United States v. Montoya De Hernandez, 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985) (almost sixteen hour detention of traveler at the border awaiting defecation not unreasonably long); United States v. Henao-Castano, 729 F.2d 1364 (11th Cir.1984) (four hour detention of internal contraband carrier awaiting excretion not unreasonable), cert. denied, — U.S. -, 105 S.Ct. 3552, 87 L.Ed.2d 674 (1985).
As to the present case — which concerns a boat, not a person — we find thoroughly analogous the recognized authority of police to maintain surveillance over or restrict the movement of an automobile, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), or to "freeze” a dwelling or other structure, Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); State v. Riley, 462 So.2d 800 (Fla.1984), awaiting the arrival of a warrant which permits the search of the vehicle or premises in question. Under .our law, a customs agent at the border is the functional equivalent of a search warrant.