[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-15105
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 23, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00133-CR-2-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAIDI RASHID MASESA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 23, 2007)**

Before BLACK, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Saidi Rashid Masesa appeals the district court's denial of his motion to

suppress evidence obtained as a result of a border search. Masesa pleaded guilty to conspiring to import more than 500 grams of cocaine in violation of 21 U.S.C. §§ 952, 960(a)(1), (b)(2), and 18 U.S.C. § 2, and conspiring to possess with an intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a), (b)(1)(B) and 18 U.S.C. § 2. He was sentenced to two concurrent terms of 97 months. The plea was conditional, and Masesa retained the right to appeal the district court's denial of his motion to suppress.

Masesa filed a motion to suppress three pieces of evidence uncovered during a border search when he returned to the United States after traveling in Brazil: (1) the cocaine pellets excreted from his body, (2) the results of his x-ray examination, and (3) the statements made by his travel companion, Amanda Ann Williams. In support of this motion, Masesa contended that the agents lacked reasonable suspicion making the search unlawful and also that the agents failed to take him before a judicial officer in a timely fashion. The magistrate judge recommended denying Masesa's motion to suppress, and the district court adopted that recommendation. This appeal followed.

We review a district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing findings of fact under the clearly erroneous standard and reviewing de novo the application of law to those facts. United States

v. Gil, 204 F.3d 1347, 1350 (11th Cir. 2000). The facts must be construed in the light most favorable to the government, because it prevailed in the district court. See United States v. Santa, 236 F.3d 662, 668 (11th Cir. 2000).

We note first that an individual's expectation of privacy is greatly reduced in the context of a border search. United States v. Montoya de Hernandez, 473 U.S. 531, 539, 105 S. Ct. 3304, 3309 (1985). This reduced expectation stems from the fact that the person or item in question entered the United States from the outside. United States v. Ramsey, 431 U.S. 606, 619, 97 S. Ct. 1972, 1980 (1977). Consequently, routine border searches are "not subject to any requirement of reasonable suspicion, probable cause, or warrant." Montoya de Hernandez, 473 U.S. at 538, 105 S. Ct. at 3309. Additionally, a secondary customs search, conducted after the initial inspection, is proper even without reasonable suspicion of criminal activity. United States v. Santiago, 837 F.2d 1545, 1548 (11th Cir. 1988). A routine border search, which only requires a "generalized 'mere suspicion,'" can include questioning, a luggage search and a pat-down or frisk. United States v. Vega-Barvo, 729 F.2d 1341, 1345 (11th Cir. 1984).

However, a customs agent must have a reasonable suspicion before conducting a more intrusive, non-routine border search, such as an x-ray examination. United States v. De Montoya, 729 F.2d 1369, 1371 (11th Cir. 1984).

Reasonable suspicion "requires a showing of articulable facts which are particularized as to the person and as to the place that is to be searched." United States v. Henao-Castano, 729 F.2d 1364, 1366 (11th Cir. 1984). Once an agent has a reasonable suspicion that the entrant is internally smuggling drugs, the agent can detain the traveler as long as it takes for the contents of his stomach to be excreted. United States v. Rodriguez, 74 F.3d 1164, 1164–65 (11th Cir. 1996). The entrant's consent to the search is unnecessary where the agents have a reasonable suspicion. See United States v. Saldarriaga-Marin, 734 F.2d 1425, 1427–28 (11th Cir. 1984).

Under the facts here, the district court properly denied Masesa's motion to suppress, because his detention was no more than a routine border search which does not require reasonable suspicion. Both the initial stop and the secondary inquiry were part of the initial border investigation. Contrary to Masesa's argument, he was not "in custody" at the time he was sent to the secondary area for questioning. This second phase of inquiry was merely an extension of the initial border search, which only lasted ninety seconds. During that brief time, the interviewing agent noticed that Williams appeared distressed and that both entrants avoided direct eye contact. Accordingly, they were directed to the secondary area for further questioning. Williams and Masesa were then separated for further questioning because Masesa was answering all of the questions and Williams kept

4

looking down at the floor and avoiding eye contact. Once separated, Masesa began to show signs of nervousness and was unable to answer questions about the specifics of his trip to Brazil. Williams also had trouble answering questions about the trip and after some questioning confessed that Masesa made her swallow pellets containing narcotics. At this point, while still in the routine border search phase of the inquiry, the agents clearly had reasonable suspicion that Williams and Masesa were smuggling drugs. Thus, the agents acted properly when they intensified their scrutiny of Masesa beyond a normal border search and conducted an x-ray examination, a procedure to which Masesa consented. Consequently, the district court did not err in denying Masesa's motion to suppress because the evidence was obtained lawfully—either during a routine border search (Williams' testimony) or after reasonable suspicion arose (cocaine and results of the x-ray).

Second, we address Masesa's contention that the agents improperly delayed in taking him before a judicial officer for the sole purpose of obtaining evidence. The federal rules of criminal procedure requires "[a] person making an arrest within the United States [to] take the defendant without unnecessary delay before a magistrate judge . . . ." Fed. R. Crim. P. 5(a). Further, any evidence obtained from a defendant during an unlawful detention is rendered inadmissible. Mallory v. United States, 354 U.S. 449, 453, 77 S. Ct. 1356, 1359 (1957).

5

We look to the reasons for the delay to determine whether Rule 5(a) has been violated. United States v. Purvis, 768 F.2d 1237, 1239 (11th Cir. 1985). Whether the defendant was mistreated or improperly interrogated are important considerations in determining whether any delay was unnecessary. Id.

Under these facts, the district court properly denied Masesa's motion to suppress, finding that there was no unnecessary delay violating Rule 5(a). Once the agents had reasonable suspicion that Masesa had swallowed cocaine pellets, they were justified in taking him to the hospital for an x-ray examination. The x-ray revealed that Masesa had multiple pellets in his stomach, and for his own health, the doctors required that he remain in the hospital to ensure that all of the pellets were passed. The decision to release Masesa from the hospital was made by the physician monitoring the contents of Masesa's stomach, not the agents. When the final x-ray showed that his stomach was clear, the agents immediately brought Masesa back to the airport for processing and formal arrest. He was taken before a magistrate judge the next day.

Additionally, the agents properly obtained an arrest warrant within forty-eight hours of the initial stop, justifying further detention. And there is no evidence that Masesa was mistreated during his detention, and he does not claim, nor is there any evidence, that he was subjected to any improper or coercive

6

interrogations during his detention.

Accordingly, the district court did not clearly err in denying Masesa's motion to suppress for unconstitutional delay. Any delay was reasonable as Masesa could not leave the hospital while still carrying cocaine pellets in his stomach.

**AFFIRMED.**