[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 16, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10293
Non-Argument Calendar

_____

D. C. Docket No. 08-60175-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KAMAGA ROBERTS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 16, 2009)

Before EDMONDSON, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Kamaga Roberts -- who pleaded guilty to cocaine importation and possession with intent to distribute, 21 U.S.C. §§ 952(a), 841(a)(1) -- appeals the denial of her motion to suppress evidence obtained as a result of an x-ray examination that was conducted following a customs search. No reversible error has been shown; we affirm.

On appeal, Roberts argues that customs agents lacked the requisite reasonable suspicion to conduct the x-ray examination. In considering the district court's denial of a motion to suppress, we review fact determinations for clear error and application of law to the facts de novo. United States v. Boyce, 351 F.3d 1102, 1105 (11th Cir. 2003). And we construe all facts in the light most favorable to the prevailing party -- here, the government. Id.

For border searches, a customs agent may conduct a more intrusive search -- such as an x-ray examination -- if the agent has reasonable suspicion to believe that a traveler is carrying contraband. United States v. De Montoya, 729 F.2d 1369, 1371 (11th Cir. 1984). When assessing reasonable suspicion, courts must "look at the totality of the circumstances of each case to see whether the detaining [agent] has a particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 122 S.Ct. 744, 750 (2002) (internal quotations omitted). "Though

2

there must be an objective basis for suspected wrongdoing, officers subjectively may assess the facts in light of their unique training, expertise, and experience in the field." United States v. Tinoco, 304 F.3d 1088, 1116 (11th Cir. 2002).

Here, customs agents earlier had received information about two women who had been arrested at a London airport for smuggling cocaine in a body suit and in condoms that were used as vaginal inserts. These women identified Roberts's sister, Kadsashad, as their recruiter. One of the women frequently had traveled from Miami to London and from Fort Lauderdale to Jamaica. In checking Roberts's flight from Fort Lauderdale to Jamaica, customs agents noticed that Roberts and another person, Taneisha Samms, were on the same flight and spoke to each other as they waited for their luggage. Samms and Roberts originally were seated next to each other on the flight but Roberts moved to a different row. Samms also purchased her ticket from the same travel agency as one of the women arrested in London.

Agents detained Roberts and Samms for questioning.[1] Samms provided agents with a false story about the reason for her trip; and she eventually admitted that she was in Jamaica with her cousin, Kadsashad Roberts. But she denied

---

[1] "Routine searches of the persons and effects of entrants [into the United States] are not subject to any requirement of reasonable suspicion, probable cause, or warrant[.]" United States v. Montoya de Hernandez, 105 S.Ct. 3304, 3309 (1985).

knowing Kamaga Roberts. And Roberts also denied knowing Samms. Roberts told agents that she had been unemployed during 2008 and no longer spoke to her sister. But customs agents had information that, in 2008, Roberts made six trips from Fort Lauderdale to Jamaica and four trips from Miami to London, all of short duration. And on two of the trips, Roberts traveled with her sister. A search of Roberts's luggage revealed no drugs. Agents suspected that Roberts was carrying drugs internally. A later x-ray examination of Roberts revealed an obstruction in her pelvic area; Roberts then admitted that she had inserted cocaine into her vaginal area.

We conclude that the district court committed no error in denying Roberts's motion to suppress: objective reasonable suspicion existed that Roberts was transporting drugs internally. Detaining agents identified particularized objective bases for requiring Roberts to submit to an x-ray, including that (1) her travel patterns were similar to other internal drug couriers recruited by her sister; (2) Roberts had traveled with her sister; and based on the agents' training and experience, it was typical for new drug couriers to travel with their recruiters at first; (3) Roberts's explanations for her many trips were implausible and vague, especially given that she was unemployed in 2008[2]; (4) she denied knowing

---

[2]For example, Roberts stated that one of her trips to London was to attend a baby shower for a friend of a friend.

4

Samms, even though they were cousins and had been seen talking to one another after the flight; and (5) Roberts had a nervous and angry demeanor when questioned by agents. Although each basis alone may have had an innocent explanation and may not be strongly probative of criminal activity, under the totality of the circumstances and based on the detaining agents' knowledge of drug importation, the circumstances rose to the level of reasonable suspicion. See Tinoco, 304 F.3d at 1116 (reasonable suspicion exists if the cumulative information of which the detaining agent is aware suggests criminal activity, "even if each fact, viewed in isolation, can be given an innocent explanation").[3]

AFFIRMED.

---

[3]On appeal, Roberts also argues that her suppression motion should have been granted because of the two-day delay in bringing her before a magistrate judge. Roberts failed to raise this claim below; and we discern no plain error. Here, reasonable suspicion existed for the x-ray; and authorities promptly obtained the necessary court order for the x-ray. See United States v. Mosquera-Ramirez, 729 F.2d 1352, 1356 (11th Cir. 1984) (once the reasonable suspicion standard has been met to justify a detention at the border, the government may detain a suspected internal smuggler for the time needed to conduct an x-ray examination).